WAYNE AUSTIN, Employee, Plaintiff-Appellee v. CONTINENTAL GENERAL TIRE, SELF-INSURED, Employer, Defendant-Appellant

No. COA99-693

(Filed 29 December 2000)

## 1. Workers' Compensation— asbestosis—plenary evidence

The Industrial Commission did not err in a workers' compensation case by finding that plaintiff retired employee had asbestosis as defined in N.C.G.S. § 97-62, because a review of the deposition transcripts and medical evidence presented to the Commission shows plenary evidence to support the Commission's findings of fact.

## 2. Workers' Compensation— occupational disease—exposure to asbestos

The Industrial Commission did not err in a workers' compensation case by determining that plaintiff retired employee was injuriously exposed to the hazards of asbestos while employed by defendant, because: (1) a claimant does not need to provide scientific proof of his exposure to asbestos for purposes of N.C.G.S.

§ 97-57; and (2) plaintiff presented substantial other evidence of his repeated exposure to asbestos during his employment with defendant.

**3. Workers' Compensation— asbestosis—application of statutes—employer not a "dusty trade"—plaintiff neither a current nor prospective employee—removal from employment not required**

The Industrial Commission did not err in a workers' compensation asbestosis case by its application of N.C.G.S. §§ 97-60 to -61.7, even though defendant employer contends it was never classified as a "dusty trade" and plaintiff retired employee is neither a current nor a prospective employee, because: (1) an employer's status as a "dusty trade" does not impact the application of the examination and compensation scheme set forth in N.C.G.S. §§ 97-60 to -61.7; (2) the language of N.C.G.S. § 97-60 limited to persons "engaged or about to engage in" employment with an industry classified as a "dusty trade" does not carry over to the examination and compensation provisions of N.C.G.S. §§ 97-61.1 through -61.7; (3) N.C.G.S. §§ 97-61.5(b) and -61.7, when read together, indicate the General Assembly's intent to allow an injured plaintiff to remain in the harmful work environment and receive the 104 weeks of compensation, and removal from the industry is not required for an employee to receive the 104 weeks of compensation; and (4) an employee who retires prior to being diagnosed with asbestosis need not be "removed" from employment to be entitled to the 104 weeks compensation set forth in N.C.G.S. § 97-61.5.

**4. Appeal and Error— preservation of issues—constitutional issue—failure to raise to Industrial Commission**

Even though defendant employer contends that the application of N.C.G.S. §§ 97-61.1 through -61.7 to this workers' compensation asbestosis case is a violation of defendant employer's right to the equal protection of the law, this issue has not been preserved because there is no evidence that defendant made any argument before the Industrial Commission regarding the constitutionality of the challenged statutes.

**5. Workers' Compensation— average weekly wage—calculation proper**

The Industrial Commission did not err in a workers' compensation case by its calculation of plaintiff retired employee's aver-

age weekly wage based on N.C.G.S. §§ 97-61.5 and 97-2(5) so that plaintiff's earnings during his last year of employment were used, because: (1) whether the results are fair and just is a question of fact, and in such case a finding of fact by the Commission controls the decision; and (2) this finding is supported by competent evidence making it binding on the Court of Appeals.

Judge GREENE dissenting.

Appeal by defendant from opinion and award entered 18 December 1998 by the North Carolina Industrial Commission sitting *en banc.* Heard in the Court of Appeals 28 March 2000.

*Wallace and Graham, P.A., by Mona Lisa Wallace, for plaintiff-appellee.*

*Hedrick, Eatman, Gardner & Kincheloe, L.L.P., by J.A. Gardner, III, and Jeff Kadis, for defendant-appellant.*

*Parker, Poe, Adams & Bernstein L.L.P., by Josephine H. Hicks, for North Carolina Citizens for Business and Industry, amicus curiae.*

*Johnston, Allison & Hord, PA, by James W. Allison, for Carolinas AGC, Inc., amicus curiae.*

*Trial Lawyers for Public Justice, P.C., by Anne Bloom and The Jernigan Law Firm, by Leonard T. Jernigan, Jr., for Trial Lawyers for Public Justice, amicus curiae.*

*The Law Offices of Robin E. Hudson, by Robin E. Hudson, for North Carolina Academy of Trial Lawyers, amicus curiae.*

McGEE, Judge.

Pursuant to N.C. Gen. Stat. § 97-86 (1999), defendant-employer Continental General Tire (defendant) appeals an opinion and award of the North Carolina Industrial Commission (the Commission) entered 18 December 1998. For the reasons stated herein, we affirm.

Plaintiff Wayne Austin (plaintiff) was employed by defendant for over twenty years, during which time the record shows he was repeatedly exposed to asbestos dust and fibers. On 9 November 1986, the union to which plaintiff belonged caused an Examobile to come to the plant and have employees screened for asbestos-related dis-

eases. Plaintiff's spirometric tests showed normal results. Radiologic studies, however, indicated "[c]hest wall pleural calcification . . . consistent with pleural disease related to asbestos exposure." Plaintiff retired on 1 June 1987 for reasons unrelated to asbestos exposure.

Several years later and after several visits to Dr. R.W. Patton, Sr. (Dr. Patton) for a complete physical and follow-up examinations, plaintiff was informed he had "[p]ulmonary fibrosis, possibly asbestosis." On 8 June 1994, Dr. Patton confirmed that diagnosis in a letter to plaintiff's attorney: "Mr. Austin had both the classical diaphragmatic pleural calcifications and pulmonary fibrosis. The criteria for a diagnosis of asbestoses [sic] can be made." Thereafter, plaintiff had a complete respiratory evaluation performed by Dr. Douglas G. Kelling, Jr. (Dr. Kelling), a member of the North Carolina Medical Panel Board. Based upon Dr. Kelling's examination, he "fe[lt] [plaintiff] ha[d] asbestosis and asbestos related pleural disease." Thereafter, on 3 May 1994, Dr. Michael J. Kelley of Charlotte Radiology, P.A., examined plaintiff and concluded:

> Findings: Extensive pleural plaquing with calcifications noted bilaterally involving the posterior lateral and even anterior aspects of the pleural surface with focal pleural thickening and heavy calcification. An area of en face pleural plaquing with calcification is seen appearing as a "pseudo-tumor" at the left lung base/diaphragmatic surface. . . . Some pleural thickening with calcification extending into the right major fissure posteriorly. . . .

> Impression: Extensive bilateral pleural plaquing and calcification consistent with asbestos exposure. Minimal pulmonary fibrosis primarily involving the lung bases.

Plaintiff was examined twice more in 1996 with similar results.

Plaintiff filed a Form 18 notice of accident in February 1989 but did not file a Form 33 request for hearing until 24 July 1995. General Tire responded, denying liability. The matter was heard before a deputy commissioner on 9 May 1996.

During the hearing, plaintiff testified that he began working for defendant on 7 August 1976 as a painter/carpenter, a position he held for nearly fifteen years. As a painter, he regularly painted the curing presses and other machinery. To prepare for painting, plaintiff was required to blow compressed air onto the machines and pipes, which were covered with asbestos-containing insulation. While painting,

plaintiff crawled and walked on asbestos-insulated steam pipes. Blowing off the machinery caused asbestos fibers to be released into the air, and walking on the pipes caused the asbestos insulation to crumble.

The majority of plaintiff's work, however, was carpentry. Almost daily, plaintiff was required to cut asbestos-containing curing press gaskets. The sawing on the gaskets created dust, which plaintiff would blow off of the floor and sweep up.

After plaintiff's tenure as a painter/carpenter, he worked as a tire trimmer for six months; there was no testimony regarding asbestos exposure resulting from this job. Plaintiff then worked another five years for General Tire as a "let-off man" on the three-roll calendar machine. Steam pipes ran into the calendar machine. Plaintiff was required to clean his machine on a daily basis, which required him to crawl over and through the steam lines to get to the various machine parts that needed cleaning. He was responsible for watching after and cleaning approximately one hundred feet of machinery and piping.

Other employees of defendant testified as to the asbestos in the plant. Bill Evans (Evans), a retired welder/pipe fitter, testified there was substantial asbestos covering the pipes in the plant. If Evans had to repair a pipe, he would cut away the asbestos insulation, which would fall to the floor and later be thrown into a garbage can. He testified as to the condition of the asbestos insulation in the curing press area, an area in which plaintiff often worked: "[W]e had an awful lot of bad insulation . . . . It was in such bad shape, you couldn't cut it and take it off in any procedures. . . . [Y]ou take the hammer and knock it off and then just get it in a trash can the best way you could." He further testified that removal began in the late 1980s.

Charles Adams (Adams), also retired from defendant worked in receiving and testified about receiving asbestos insulation, which he took to the stockroom. For the last five years of his employment, he worked on a three-roll calendar, the same job that plaintiff had during five years of his employment with General Tire. Adams testified that there were many asbestos-insulated steam pipes in the calendar area. He stated he had seen the pipes leaking, requiring the pipe fitter to repair them. He testified as to the dust created during removal of asbestos insulation. Adams testified that merely coming in contact with the insulation on the pipes would release dust into the air.

Several other co-workers testified as to the amount of asbestos insulation in the plant and to plaintiff's repeated exposure to asbestos fibers and dust.

Defendant's expert, Thomas Wade Shepler (Shepler), gave deposition testimony that approximately 5,500 linear feet of asbestos pipe insulation were removed from the General Tire plant in October and November 1989. Shepler admitted that asbestos was found lying on the floor in the curing press area, that "asbestos containing material" had accumulated over the years in the grating on the floor, that pieces of asbestos-containing material were lying on the floor, and that a small amount of asbestos was present on overhead piping and support beams.

Depositions of the physicians who had examined plaintiff, as well as all of plaintiff's pertinent medical records, were submitted to the deputy commissioner.

After receipt of all the evidence and exhibits, on 10 July 1998, the deputy commissioner filed an opinion and award making thorough and extensive findings of fact and concluding that plaintiff had contracted asbestosis, entitling him to 104 weeks of compensation pursuant to N.C. Gen. Stat. § 97-61.5(b) (1991) at the rate of $30.00 per week. Plaintiff appealed to the Commission, which sat *en banc* and, in an opinion and award filed 18 December 1998, unanimously modified and affirmed the opinion and award of the deputy commissioner. The Commission determined that plaintiff suffered from asbestosis and was entitled to 104 weeks of compensation pursuant to N.C.G.S. § 97-61.5(b), but at the rate of $308.00 per week, an amount based upon plaintiff's last full year of employment with defendant. Defendant appeals to this Court.

I.

[1] Defendant first contends the Commission erred in finding that plaintiff had asbestosis as defined in N.C. Gen. Stat. § 97-62 (1991) (the "characteristic fibrotic condition of the lungs caused by the inhalation of asbestos dust"). Relying on a statement from the American Thoracic Society and other medical literature, General Tire contends that "asbestosis is a distinct medical condition with specific characteristics and physical manifestations" that cannot be diagnosed "in the absence of any abnormal parenchymal findings."

In reviewing decisions by the Commission, "we are limited to the consideration of two questions: (1) whether the Full Commission's

findings of fact are supported by competent evidence; and (2) whether its conclusions of law are supported by those findings." *Calloway v. Memorial Mission Hosp.*, 137 N.C. App. 480, 484, 528 S.E.2d 397, 400 (2000) (citation omitted). If the findings are supported by *any* competent evidence, they are conclusive on appeal, even if other evidence would support contrary findings. *See id.* However, the Commission's conclusions of law are reviewable by our Court *de novo. See Lewis v. Sonoco Prods. Co.*, 137 N.C. App. 61, 68, 526 S.E.2d 671, 675 (2000). Additionally, "[t]he evidence tending to support plaintiff's claim is to be viewed in the light most favorable to plaintiff, and plaintiff is entitled to the benefit of every reasonable inference to be drawn from the evidence." *Adams v. AVX Corp.*, 349 N.C. 676, 681, 509 S.E.2d 411, 414 (1998) (citation omitted), *reh'g denied*, 350 N.C. 108, 532 S.E.2d 522 (1999).

In the case before us, the Commission made extensive findings regarding the voluminous medical evidence and expert testimony presented. It weighed the evidence and deposition testimony and found:

> [G]reater weight is accorded to the opinions of Dr. Kelly, Dr. Kelling and Dr. Dula than to the opinions of Dr. Sawyer and Dr. Barnett. Dr. Kelling is on the Advisory Medical Panel for the North Carolina Industrial Commission. Dr. Michael Kelly is a radiologist who reviewed plaintiff's films due to random assignment on that day.

Based on this weighing of evidence, the Commission found: "Plaintiff suffers from asbestosis, evidenced most clearly by irregular linear opacities and blurring of the parenchymal points at the base of both lungs on X-rays and CT scans and manifested by mild to moderate pulmonary impairment."

A review of the deposition transcripts and medical evidence presented to the Commission shows plenary evidence to support the Commission's findings of fact. Accordingly, those findings are conclusive on appeal. The careful and thorough manner in which the Commission set forth those findings demonstrates its diligent consideration of the evidence. This assignment of error is overruled.

## II.

**[2]** Defendant next contends the Commission erred in its determination that plaintiff was "injuriously exposed" to the "hazards of asbestos" while employed by General Tire. *See* N.C. Gen. Stat. § 97-57

(1991) ("[W]hen an employee has been exposed to the hazards of asbestosis . . . for as much as 30 working days, or parts thereof, within seven consecutive calendar months, such exposure shall be deemed injurious but any less exposure shall not be deemed injurious . . . ."). Specifically, defendant contends plaintiff failed to "put forward any necessary expert testimony on any scientific information concerning the presence of any hazardous airborne/breathable or inhalable levels of asbestos present at the [] plant during his employment." This argument is without merit.

An analogous argument was made by the defendant-employer in *Gay v. J.P. Stevens & Co.*, 79 N.C. App. 324, 339 S.E.2d 490 (1986). In *Gay*, the Commission found the plaintiff's chronic obstructive lung disease to be a compensable "occupational disease," because it arose from his exposure to toxic substances in dye houses and the concentration of dust in the warehouse. The defendant argued that expert testimony regarding the plaintiff's exposure was "mere speculation" because "the levels of toxic substances in the dye houses and the concentration of dust in the warehouse were never actually measured." *Id.* at 332, 339 S.E.2d at 495. In rejecting the defendant's argument, our Court stated:

> "It is unreasonable to assume that the legislature intended an employee to bear the burden of making [toxicity] measurements during his employment in order to lay the groundwork for a worker's compensation claim. Such an interpretation of the statute would make it virtually impossible for an employee to successfully bring suit for compensation . . . due to the difficulty he would encounter in attempting to make measurements of [toxic airborne substances] on his employer's premises. A construction of the statute which defeats its purpose . . . would be irrational and will not be adopted by this Court."

*Id.* at 333-34, 339 S.E.2d at 496 (quoting *McCuiston v. Addressograph-Multigraph Corp.*, 308 N.C. 665, 668, 303 S.E.2d 795, 797 (1983) (citations omitted)).

The rationale of the *Gay* and *McCuiston* Courts is equally applicable to the facts now presented. Accordingly, we conclude that a claimant need not provide scientific proof of his exposure to asbestos for purposes of N.C.G.S. § 97-57. Moreover, as recited above, plaintiff presented substantial other evidence of his repeated exposure to asbestos during his employment with General Tire. This assignment of error is overruled.

## III.

**[3]** Defendant also assigns error to the Commission's application of N.C. Gen. Stat. §§ 97-60 to -61.7 (1991 & Cum. Supp. 1998) to the facts presented in this case. Relying upon basic principles of statutory construction, we disagree.

Our primary task in construing statutory provisions is to ensure that the legislative intent is accomplished. *See Radzisz v. Harley Davidson of Metrolina,* 346 N.C. 84, 88, 484 S.E.2d 566, 569 (1997). "Interpretations that would create a conflict between two or more statutes are to be avoided, and 'statutes should be reconciled with each other . . .' whenever possible." *Meyer v. Walls,* 122 N.C. App. 507, 512, 471 S.E.2d 422, 427 (1996) (omission in original) (quoting *Hunt v. Reinsurance Facility,* 302 N.C. 274, 288, 275 S.E.2d 399, 405 (1981)), *aff'd in part, rev'd in part on other grounds,* 347 N.C. 97, 489 S.E.2d 880 (1997).

Statutory interpretation properly commences with an examination of the plain words of a statute. *See Electric Supply Co. v. Swain Electrical Co.,* 328 N.C. 651, 656, 403 S.E.2d 291, 294 (1991). Defendant contends "plaintiff is not a member of any of the categories of persons to whom the provisions . . . apply" because defendant has never been classified as a "dusty trade" and because plaintiff is "neither a current nor a prospective employee." The terminology relied on by defendant to support its contention that recovery under N.C.G.S. § 97-61.5 should not have been granted to plaintiff is found in N.C.G.S. § 97-60. While related to the compensation provisions regarding asbestosis and/or silicosis, N.C.G.S. § 97-60 stands alone in its application. It provides in pertinent part:

> The compulsory examination of employees and prospective employees as herein provided applies only to persons engaged or about to engage in an occupation which has been found by the Industrial Commission to expose them to the hazards of asbestosis and/or silicosis. . . . [I]t shall be the duty of every employer, in the conduct of whose business his employees or any of them are subjected to the hazard of asbestosis and/or silicosis, to provide prior to employment necessary examinations of all new employees for the purpose of ascertaining if any of them are in any degree affected by asbestosis and/or silicosis or peculiarly susceptible thereto; and every such employer shall from time to time, as ordered by the Industrial Commission, provide similar examinations for all of his

employees whose employment exposes them to the hazards of asbestosis and/or silicosis.

N.C.G.S. § 97-60. Accordingly, this section establishes a procedure by which certain employers (i.e., those found by the Commission to subject their employees to the hazards of asbestosis or silicosis) screen potential and current employees for any signs of asbestosis or asbestos-related disorders. By its terms, N.C.G.S. § 97-60 is limited to "persons engaged or about to engage in" employment with an industry classified as a "dusty trade." General Tire was never so classified and thus was never required to implement screening procedures for its prospective and current employees.

However, an employer's status (or lack thereof) as a "dusty trade" does not impact the application of the examination and compensation scheme set forth in N.C.G.S. §§ 97-61.1 through -61.7. The language in those sections refers to "an employee [who] has asbestosis or silicosis," N.C.G.S. § 97-61.1, and speaks generically to "employers." To limit the application of N.C.G.S. §§ 97-61.1 through -61.7 to employers designated as "dusty trades" would adversely affect the class of employees suffering from asbestosis or silicosis, thus thwarting the intent of the General Assembly to compensate employees who have contracted asbestosis. Accordingly, defendant's contention that the Commission erred in applying N.C.G.S. §§ 97-61.1 through -61.7 because it had not been designated a "dusty trade" is without merit.

Likewise, it follows that the language, "persons engaged or about to engage in," does not extend to N.C.G.S. §§ 97-61.1 through -61.7. The language of N.C.G.S. § 97-60 is more far-reaching than that used in N.C.G.S. §§ 97-61.1 through -61.7, in that N.C.G.S. § 97-60 requires screening of both current *and prospective* employees, whereas N.C.G.S. §§ 97-61.1 through -61.7 apply only to "employees."

Our interpretation is supported by the language of N.C. Gen. Stat. § 97-72 (Cum. Supp. 1998), which sets forth as one of the specific statutory purposes for creation of the advisory medical committee "to conduct examinations and make reports *as required by G.S. 97-61.1 through 97-61.6.*" (Emphasis added.) The General Assembly's omission of N.C.G.S. § 97-60 further suggests the exclusivity of that section.

Accordingly, we hold that an employer need not be designated a "dusty trade" for N.C.G.S. §§ 97-61.1 through -61.7 to apply. Likewise,

the "engaged or about to engage in" language of N.C.G.S. § 97-60 does not carry over to the examination and compensation provisions of N.C.G.S. §§ 97-61.1 through -61.7.

However, defendant also contends that "[r]emoval by order is a condition precedent to entitlement to 104 weeks of compensation." In *Moore v. Standard Mineral Co.*, 122 N.C. App. 375, 469 S.E.2d 594 (1996), our Court discussed the "removal" requirement.

> [T]he term "removal" as used by G.S. § 97-61.5 presumes medical diagnosis will occur *during* the hazardous employment. Thus, the language regarding "removal from the industry" has specific application only to occasions when . . . identified victims of occupational disease [] are thereafter "removed" from a hazardous industry by directive of the Commission. However, the phrase is inapposite to instances such as that *sub judice* wherein a claimant is diagnosed at some point *subsequent* to leaving hazardous employment.

*Id.* at 378, 469 S.E.2d at 596. We note, however, that in *Moore*, the defendant agreed that the plaintiff was entitled to benefits under N.C.G.S. § 97-61.5(b); the issue in dispute was determination of the plaintiff's "average weekly wages." For that reason, the *Moore* Court added,

> [W]e emphasize that the situation of a claimant no longer employed in any capacity at the time of diagnosis is not before us, and that legislative action to address such an instance may well be required to fulfill completely the intended purpose of compensating workers who have contracted occupational diseases.

*Id.* at 380, 469 S.E.2d at 598 (citation omitted). We believe, however, that the statutes, when read together, adequately speak to the situation referred to in *Moore* and now presented to our Court.

The general rule for recovery for individuals suffering from asbestosis or asbestos-related disorders is found at N.C. Gen. Stat. § 97-64 (1991), which provides:

> Except as herein otherwise provided, in case of disablement or death from silicosis and/or asbestosis, compensation shall be payable in accordance with the provisions of the North Carolina Workers' Compensation Act.

The exceptions to which N.C.G.S. § 97-64 refers are found in N.C.G.S. §§ 97-61.1 through -61.7. N.C.G.S. §§ 97-61.1 through -61.4 establish a

series of examinations by the Commission's advisory medical committee of "an employee [who] has asbestosis or silicosis" and reports to be made from those examinations. N.C.G.S. § 97-61.1. After the first examination and report, *see* N.C.G.S. §§ 97-61.1, -61.2, N.C.G.S. § 97-61.5 mandates the following:

> (a) After the employer and employee have received notice of the first committee report, the Industrial Commission, unless it has already approved an agreement between the employer and employee, shall set the matter for hearing at a time and place to be decided by it, to hear any controverted questions, determine if and to whom liability attaches, and where appropriate, file a written opinion with its findings of fact and conclusions of law and cause its award to be issued thereon . . . .

> (b) If the Industrial Commission finds at the first hearing that the employee has either asbestosis or silicosis . . . it shall by order remove the employee from any occupation which exposes him to the hazards of asbestosis or silicosis . . . ; provided, that *if the employee is removed from the industry* the employer shall pay or cause to be paid . . . to the employee affected by such asbestosis or silicosis a weekly compensation equal to sixty-six and two-thirds percent (66⅔%) of his average weekly wages before removal from the industry . . . which compensation shall continue for a period of 104 weeks.

(Emphasis added.) N.C.G.S. § 97-61.6 then provides means for recovering additional partial or total disability and compensation for resulting death due to asbestosis or silicosis.

Looking solely at the language of N.C.G.S. § 97-61.5(b), it appears that defendant's contention is correct, that is, that recovery under this section is predicated upon an employee's removal from the industry. However, the Act is to be construed *in para materia*, and N.C.G.S. § 97-61.7 frustrates defendant's theory and sheds significant light on the situation posed by the *Moore* Court. N.C.G.S. § 97-61.7 reads in pertinent part:

> An employee who has been compensated under the terms of G.S. 97-61.5(b) *as an alternative to forced change of occupation,* may, subject to the approval of the Industrial Commission, waive in writing his right to further compensation for any aggravation of his condition that may result from his continuing in an occupation exposing him to the hazards of asbestosis or silicosis, in

AUSTIN v. CONTINENTAL GEN. TIRE

[141 N.C. App. 397 (2000)]

> which case payment of all compensation awarded previous to the date of the waiver . . . shall bar any further claims by the employee, . . . provided, that in the event of total disablement or death as a result of asbestosis or silicosis with which the employee was so affected, compensation shall nevertheless be payable, but in no case, whether for disability or death or both, for a longer period than 100 weeks *in addition to the 104 weeks already paid.*

(Emphasis added.) Construing the Workers' Compensation Act "liberally in favor of the injured worker" as we must, *Hicks v. Leviton Mfg. Co.*, 121 N.C. App. 453, 457, 466 S.E.2d 78, 81 (1996), these sections, when read together, indicate the General Assembly's intent to allow an injured plaintiff to remain in the harmful work environment *and* receive the 104 weeks of compensation; removal from the industry is not required for an employee to receive the 104 weeks of compensation.

This automatic compensation scheme satisfies the legislative purpose of providing "compensation to those workers affected with asbestosis or silicosis, whose principal need is compensation." *Young v. Whitehall Co.*, 229 N.C. 360, 365, 49 S.E.2d 797, 801 (1948).

Our reading of these statutes is guided by earlier statements by our Courts. In *Roberts v. Southeastern Magnesia and Asbestos Co.*, 61 N.C. App. 706, 301 S.E.2d 742 (1983), our Court set forth the language of N.C.G.S. §§ 97-61.5(b) and -61.7 and stated:

> It is clear from the language of these two statutes that a diagnosis of asbestosis . . . is the equivalent of a finding of actual disability. . . .

> The Commission's award was predicated upon the employee avoiding further exposure to asbestosis in his employment. We recognize that the intent of the Legislature in providing for an automatic 104 installment payments was to *encourage* employees to remove themselves from hazardous exposure to asbestos and to provide for employee rehabilitation[.] We also recognize that G.S. 97-61.5(b) which authorizes this award, has as an *additional purpose* the compensation of employees for the incurable nature of the disease of asbestosis. There is no indication that the Legislature intended to prohibit any recovery whatsoever to those employees who refused to remove themselves from contact with asbestos after being diagnosed as having asbestosis.

The statutory language merely prohibits recovery for actual partial incapacity if the employee, after receiving the initial compensation in the form of the 104 week installment payments, is shown to have remained in a job where he or she is exposed to asbestos.

*Id.* at 710-11, 301 S.E.2d at 744-45 (emphasis added) (internal citations omitted). Our Court, in *Hicks*, 121 N.C. App. at 456, 466 S.E.2d at 81, quoted *Roberts* with approval and stated: "Thus, this Court has previously concluded that the Legislature intended compensation under G.S. § 97-61.5(b) as compensation for permanent damage to the employee's lungs due to asbestosis *as well as* for switching trades." (Emphasis added.)

Finally, in according deference to the Commission's determination in similar situations, *see Carpenter v. N.C. Dept. of Human Resources*, 107 N.C. App. 278, 279, 419 S.E.2d 582, 584 (1992) (stating that a reviewing court should defer to an agency's reasonable interpretation of a statute it administers), we note that our exegesis of the statutes is consistent with employers' and the Commission's longstanding practices of paying and awarding benefits pursuant to N.C.G.S. § 97-61.5, *see, e.g., Davis v. Weyerhaeuser Co.*, 132 N.C. App. 771, 514 S.E.2d 91 (1999) (plaintiff retired and then sought benefits for asbestosis; Commission awarded $20,000 for permanent injury to his lungs pursuant to N.C. Gen. Stat. § 97-31(24) and held that employer was not entitled to credit for payment of 104 weeks pursuant to N.C.G.S. § 97-61.5); *Stroud v. Caswell Center*, 124 N.C. App. 653, 478 S.E.2d 234 (1996) (awarding plaintiff, who retired in 1987 and filed claim in 1989, 104 weeks compensation pursuant to N.C.G.S. § 97-61.5 and $4,000 for permanent lung damage pursuant to N.C.G.S. § 97-31(24)); *Woodell v. Starr Davis Co.*, 77 N.C. App. 352, 335 S.E.2d 48 (1985) (awarding 104 weeks compensation to plaintiff who retired in 1979 and filed claim in 1982); *Mabe v. Granite Corp.*, 15 N.C. App. 253, 189 S.E.2d 804 (1972) (defendant voluntarily paid 104 weeks compensation to plaintiff who had quit in 1968 and thereafter sought benefits).

Accordingly, we hold that an employee who retires prior to being diagnosed with asbestosis need not be "removed" from employment to be entitled to the 104 weeks compensation set forth in N.C.G.S. § 97-61.5. Defendant's assignments of error in this regard are overruled.

IV.

**[4]** Defendant argues in the alternative that application of N.C.G.S. §§ 97-61.1 through -61.7 "is in violation of the rights of defendant[] to the equal protection of the law as guaranteed by the constitutions of the United States and the State of North Carolina." In response, one of plaintiff's contentions is that defendant failed to raise the constitutionality of the statutes before the Commission.

"It is well established in this jurisdiction that the constitutionality of a statute will not be reviewed in the appellate court unless it was raised and passed upon in the proceedings below[.]" *Comr. of Insurance v. Rate Bureau,* 300 N.C. 381, 428, 269 S.E.2d 547, 577 (1980) (citation omitted), *superseded by statute on other grounds as stated in State ex rel. Comm'r of Ins. v. N.C. Rate Bureau,* 129 N.C. App. 662, 501 S.E.2d 681 (1998), *aff'd,* 350 N.C. 539, 516 S.E.2d 150 (1999); *see also Blackmon v. N.C. Dept. of Correction,* 118 N.C. App. 666, 674, 457 S.E.2d. 306, 311, *aff'd on other grounds,* 343 N.C. 259, 470 S.E.2d 8 (1996); N.C.R. App. P. 10(b)(1). There is no evidence of record that General Tire made any argument before the Commission regarding the constitutionality of the challenged statutes. This issue was not raised before the Commission, and we therefore do not consider it here.

V.

**[5]** Lastly, we address defendant's contention that the Commission erred in calculating plaintiff's average weekly wage. N.C.G.S. § 97-61.5(b) provides that

> the employer shall pay or cause to be paid as in this subsection provided to the employee affected by such asbestosis or silicosis a weekly compensation equal to sixty-six and two-thirds percent (66 2/3%) of his *average weekly wages* before removal from the industry, but not more than the amount established annually to be effective October 1 as provided in G.S. 97-29 or less than thirty dollars ($30.00) a week[.]

(Emphasis added.) Relying upon this language, the deputy commissioner concluded:

> 7. In the case <u>sub judice</u>, plaintiff voluntarily left his hazardous employment and was diagnosed as havi[]ng asbestosis subsequent to the departure. In order to determine benefits, for a worker [who] has voluntarily left hazardous employment the

focus should be upon the determination of "average weekly wage" rather than upon "removal from the industry". [sic]

8. For the purposes of making an award under N.C. Gen. Stat. § 97-61.5(b), the wages at the time of diagnosis rather than the wages at the last time of hazardous exposure should be considered.

. . . .

10. The legislature has not provided guidance as to determining average weekly wage of an individual who has retired from ha[z]ardous work where he was exposed to asbestos, has been diagnosed with asbestosis, but has never been disabled within the meaning of the Workers' Compensation Act. Plaintiff is entitled to be compensated for 104 weeks at $30.00 per week.

(Internal citations omitted.) The Commission disagreed with these determinations and found instead:

39. In the 52 weeks prior to his retirement on June 1, 1987, plaintiff earned a salary of $31,655.99, which yields an average weekly wage of $608.76 and a weekly compensation rate of $405.83. The maximum weekly benefit in effect for 1987 limits the weekly compensation to $308.00. Plaintiff has not returned to work in any capacity for defendant or any other employer.

40. The first four preferred methodologies used to calculate the average weekly wage under N.C. Gen. Stat. § 97-2(5) would not be fair to the parties. Disability and thus earnings under N.C. Gen. Stat. § 97-60 et seq., like those under N.C. Gen. Stat. § 97-31, are conclusively presumed lost, whether actually earned or not. The best evidence of those earnings conclusively presumed lost for retirees suffering from asbestosis and silicosis is the earnings in the last year of employment. The fifth methodology under N.C. Gen. Stat. § 97-2(5) is for these exceptional reasons invoked for purposes of calculating average weekly wages for retirees first diagnosed post employment as having asbestosis and silicosis. This method is also fair to the employer because premiums were paid based on that year's payroll.

Accordingly, the Commission concluded:

6. Considering all the factors at issue in this case, an appropriate basis for determining a fair and just average weekly wage for plaintiff is to calculate benefits based on the wages

last earned by plaintiff in the employment of last injurious exposure.

7. Having contracted asbestosis, plaintiff is entitled to payment of weekly compensation at the rate of $308.00 per week for 104 weeks.

(Internal citations omitted.)

The Commission relied not only on N.C.G.S. § 97-61.5 in rendering its decision, but looked also to N.C. Gen. Stat. § 97-2 (Cum. Supp. 1998), which defined terms used in the Act. Subsection (5) of that section defines "average weekly wages":

"Average weekly wages" shall mean the earnings of the injured employee in the employment in which he was working at the time of the injury during the period of 52 weeks immediately preceding the date of the injury . . . ; provided, results fair and just to both parties will be thereby obtained. . . .

But where for exceptional reasons the foregoing would be unfair, either to the employer or employee, such other method of computing average weekly wages may be resorted to as will most nearly approximate the amount which the injured employee would be earning were it not for the injury.

N.C.G.S. § 97-2(5). In *Moore*, the "fair and just" result was to use the language of the first sentence and base the plaintiff's recovery on the "wages earned in his employment 'at the time of the injury,' *i.e.*, the time of his diagnosis." *Moore*, 122 N.C. App. at 379, 469 S.E.2d at 597 (citation omitted): In so doing, the plaintiff's recovery was increased from $62.01 per week (66 2/3% of his average weekly wage during his last year of employment with the defendant) to $263.42 per week (66 2/3% of his average weekly wage at the time of diagnosis, at which time he was self-employed).

In the case before us, the Commission found the method used by *Moore* to be unfair to the parties. Accordingly, it relied upon the following language of N.C.G.S. § 97-2(5): "But where for exceptional reasons the foregoing would be unfair, either to the employer or employee, such other method of computing average weekly wages may be resorted to as will most nearly approximate the amount which the injured employee would be earning were it not for the injury." "The intent of this statute is to make certain that the results reached are fair and just to both parties." *Hendricks v. Hill Realty*

*Group, Inc.,* 131 N.C. App. 859, 862, 509 S.E.2d 801, 803 (1998) (citation omitted), *disc. review denied,* 350 N.C. 379, 536 S.E.2d 73 (1999). Furthermore, whether the results are fair and just " 'is a question of fact; and in such case a finding of fact by the Commission controls [the] decision.' " *Id.* (citation omitted). The method prescribed by the Commission was to rely upon plaintiff's earnings during his last year of employment. Using this figure was, according to the Commission, fair to both plaintiff and General Tire. As this finding is supported by competent evidence, it is binding on our Court. Accordingly, this assignment of error is overruled.

The opinion and award of the Commission is affirmed.

Affirmed.

Judge EDMUNDS concurs.

Judge GREENE dissents.

Judge GREENE dissenting.

I disagree with the majority that an employee "need not be 'removed' from employment to be entitled to the 104 weeks compensation set forth in N.C.G.S. § 97-61.5." I, therefore, dissent.

N.C. Gen. Stat. § 97-64 sets forth the general rule that "in case of disablement or death from silicosis and/or asbestosis, compensation shall be payable in accordance with the provisions of the North Carolina Workers' Compensation Act." N.C.G.S. § 97-64 (1999). In N.C. Gen. Stat. §§ 97-61.1 through -61.7, however, our Legislature has set forth an exception to this general rule. The exception, which applies to employees who have received a diagnosis of silicosis and/or asbestosis, provides, in pertinent part:

> (b) If the Industrial Commission finds . . . the employee has either asbestosis or silicosis or if the parties enter into an agreement to the effect that the employee has silicosis or asbestosis, *it shall by order remove the employee from any occupation which exposes him to the hazards of asbestosis or silicosis,* and if the employee thereafter engages in any occupation which exposes him to the hazards of asbestosis or silicosis without having obtained the written approval of the Industrial Commission as provided in G.S. 97-61.7, neither he, his dependents, personal representative nor any other person shall be entitled to any compen-

sation for disablement or death resulting from asbestosis or silicosis; provided, that *if the employee is removed from the industry the employer shall pay or cause to be paid* as in this subsection provided to the employee affected by such asbestosis or silicosis a weekly compensation equal to sixty-six and two-thirds percent (66 2/3%) of his average weekly wages before removal from the industry, but not more than the amount established annually to be effective October 1 as provided in G.S. 97-29 or less than thirty dollars ($30.00) a week, which compensation shall continue for a period of 104 weeks. Payments made under this subsection shall be credited on the amounts payable under any final award in the cause entered under G.S. 97-61.6.

N.C.G.S. § 97-61.5(b) (1999) (emphasis added). The unambiguous language of section 97-61.5(b) requires an employee to be "removed" from his employment as a prerequisite to receiving the 104 weeks of compensation provided for in the statute. *See State v. Green*, 348 N.C. 588, 596, 502 S.E.2d 819, 824 (1998) (when provisions of a statute are unambiguous, "there is no room for judicial construction and the courts must give the statute its plain and definite meaning"), *cert. denied*, 525 U.S. 1111, 142 L. Ed. 2d 783 (1999). An employee who is no longer employed at the time he is diagnosed with asbestosis, therefore, may not, under the plain language of section 97-61.5(b), proceed with a workers' compensation claim under this statute. Further, even assuming the language of section 97-61.5(b) is ambiguous, a reading of the statute that requires the Commission to order an employee removed from the industry prior to receiving 104 weeks of compensation comports with the Legislature's intent when enacting the statute. *See State v. Tew*, 326 N.C. 732, 738, 392 S.E.2d 603, 607 (1990) (courts must give effect to legislative intent when construing a statute). Sections 97-61.1 through -61.7 were enacted "to encourage employees to remove themselves from hazardous exposure to asbestos and to provide for employee rehabilitation." *Roberts v. Southeastern Magnesia and Asbestos Co.*, 61 N.C. App. 706, 710, 301 S.E.2d 742, 744 (1983). An employee who is no longer employed in a position that causes harmful exposure need not be "removed" from his employment. Additionally, sections 97-61.1 through -61.7 set forth monitoring and examination procedures that an employee must undergo in order to receive compensation. These "monitoring and examination procedure[s] . . . presume[] medical diagnosis will occur *during* the hazardous employment." *Moore v. Standard Mineral Co.*, 122 N.C. App. 375, 378, 469 S.E.2d 594, 596 (1996).

The majority states that, although the plain language of section 97-61.5(b) provides "recovery under this section is predicated upon an employee's removal from the industry," the Legislature intended section 97-61.5(b) to apply even when no removal order has been issued. The majority cites N.C. Gen. Stat. § 97-61.7 in support of its holding. Section 97-61.7 permits an employee who has been compensated pursuant to section 97-61.5(b), with the approval of the Commission, to retain his employment with his employer and to waive any further compensation based on aggravation of his condition. N.C.G.S. § 97-61.7 (1999). Section 97-61.7, however, applies only after an employee has been allowed compensation under section 97-61.5(b), and section 97-61.7 does not alter the requirement of section 97-61.5(b) that the Commission order the employee "removed" from employment with employer.

Additionally, the majority cites *Roberts* in support of its holding. In *Roberts*, this Court held that an employee who remained in a job where he was exposed to asbestos was not precluded from receiving 104 weeks of compensation under section 97-61.5(b). *Roberts*, 61 N.C. App. at 710-11, 301 S.E.2d at 744-45. In *Roberts*, however, the Commission ordered the employee removed from employment that required contact with asbestos. *Id.* at 711, 301 S.E.2d at 745. Accordingly, *Roberts* does not stand for the proposition that an order of removal is not a prerequisite to recovery under section 97-61.5(b).

I acknowledge the "removal" requirement of section 97-61.5(b) raises concerns regarding whether an employee who chooses to remove himself from employment prior to a diagnosis of asbestosis should be precluded from receiving 104 weeks of compensation under section 97-61.5(b). For example, this statute may encourage employees who are exposed to asbestos to remain in their employment until they receive a diagnosis of asbestosis. These concerns, however, should not be resolved by this Court; rather, the proper forum for addressing these concerns is in the Legislature. *See Moore*, 122 N.C. App. at 380, 469 S.E.2d at 598 (noting legislative action may be required to address asbestosis claims of employees who are no longer employed by their employers at the time of diagnosis). Accordingly, I would reverse the opinion and award of the Commission and hold that because plaintiff was not employed by defendant at the time of his diagnosis and, therefore, was not "removed" from his employment pursuant to section 97-61.5(b), section 97-64 provides plaintiff's sole remedy for his alleged asbestos-related disorder.