***********
The Full Commission has reviewed the Deputy Commissioner's Opinion and Award based on the record of the proceedings before the Deputy Commissioner. Plaintiff and defendants, Pipe Boiler Insulation and Atlantic Mutual Insurance Company, have shown good grounds to reconsider the evidence and to receive further evidence. Having reviewed the competent evidence of record, the Full Commission hereby affirms in part and reverses in part the Opinion and Award of the Deputy Commissioner and remands this action to receive further evidence in accordance with this Opinion.
 ADDITIONAL EVIDENCE
Defendants Pipe Boiler Insulation and Atlantic Mutual Insurance Company have requested the Full Commission to admit into evidence insurance policy information which includes a February 27, 2001, letter from Maxanne Reddick, Claims Supervisor, with Atlantic Mutual Insurance Company, and an Affidavit of David Humphries which includes portions of insurance policies issued to Pipe Boiler Insulation, Inc., by Atlantic Mutual Insurance Company. These defendants also requested to depose further witnesses. Having reviewed this information, and in light of the Findings of Fact and Conclusions of Law recited below, the Full Commission grants defendant's Motion To Admit Subsequently Discovered Evidence And/Or Depose Further Witnesses and does hereby accept into the record the February 27, 2001, letter of Maxanne Reddick with handwritten response from Erma Champion of the Industrial Commission and the Affidavit of David Humphries with attached exhibits. The Full Commission further allows the parties to proceed with depositions and other discovery to assist the Industrial Commission in determining the workers' compensation insurance carrier, if any, for Carolina Industrial Insulation for the periods that include 1971.
 ***********
The Full Commission finds as fact and concludes as matters of law, the following which were entered into by the parties as:
 STIPULATIONS
1. The parties are subject to the North Carolina Workers' Compensation Act.
2. Atlantic Mutual Insurance Company provided workers' compensation coverage for Pipe Boiler Insulation, Inc. from January 4, 1969, to January 4, 1973.
3. North River Insurance Company provided workers' compensation coverage for Pipe Boiler Insulation, Inc. from January 4, 1973, to January 4, 1974.
4. Employee has been diagnosed with asbestosis and currently suffers from asbestosis and asbestos-related pleural disease.
5. The parties stipulated into evidence, without need for further authentication or verification, Employee's medical records from the following providers:
a. Dr. Alleyene
b. Dr. Curseen
c. Dr. Ashton
6. The parties stipulated into evidence, without need for further authentication or verification, the following documents.
 a. Industrial Commission Form 18B with attached diagnosing medical records.
b. Administrative Order filed September 18, 2000 by Executive Secretary Tracey H. Weaver.
c. Industrial Commission Form 61 filed by Defendants Pipe Boiler Insulation and Atlantic Mutual Insurance.
d. Social Security Administration — Itemized Statement of Earnings.
e. Defendants Pipe Boiler Insulation and EBI Companies' Response to Plaintiff's First Set of Interrogatories.
f. Asbestos Removal Permits for Sayles Biltmore Bleacheries.
g. Other documents of asbestos removal, inspections, etc.
 h. Asbestos Survey Report on Sayles Biltmore Facility dates August 13, 1992.
 ***********
Based upon the competent evidence of record, the Full Commission makes the following additional:
 FINDINGS OF FACT
1. Plaintiff worked for Carolina Industrial Insulation from 1964 to 1974. In 1974, Pipe Boiler Insulation purchased Carolina Industrial Insulation. From 1964 to 1971 plaintiff was an insulation mechanic with Carolina Industrial Insulation. In 1971, plaintiff was promoted to field superintendent. From 1971 to 1978, he was a field superintendent and from 1978 to 1982, he was branch manager. Since 1982, he has been president of Greenville Industrial Insulation.
2. As an insulation mechanic, plaintiff would remove old insulation and then install pipe insulation, duct insulation and insulate boilers, chillers, smokestacks, et cetera. Plaintiff removed and installed insulation on a variety of piping in industrial facilities. During Plaintiff's time as an insulator mechanic, the industry standard for insulation used on steam piping and condensate piping was asbestos.
3. As an insulator mechanic, Plaintiff would be assigned to different job sites. Generally his first duty would involve tearing off old insulation which was usually wrapped with cloth or wired around a pipe. He stated that most of the time, the old insulation would be in a deteriorated condition and hanging off the piping. He would unwrap the cloth or cut the wiring and then knock the insulation off the pipe. He would use a hammer, rubber mallet, wire cutters or his bare hands to tear away the old insulation. When he removed the insulation, the insulation would fall to the floor. This was an extremely dusty process. He testified that the insulation he removed was most often asbestos insulation. He based this belief partially on his experience. He has worked in the insulation industry for forty years and has learned the different types of insulation products based upon appearance and how they are used. He testified that most insulation prior to 1973 was asbestos insulation. Further, he could tell from the color and texture and how the product was used that most of the insulation he removed was asbestos.
4. After plaintiff removed asbestos from a particular location, he next would reinsulate the piping. He testified that up until 1973, he used asbestos insulation to insulate piping. He knew this from the appearance of the insulation but also because the insulation came in boxes labeled "asbestos." When the Plaintiff would insulate a pipe, he had to cut the pieces to fit the length of the pipe. He would use a saw or knife to cut the piping. He would then wire the pieces together. He testified that insulating pipe always created a tremendous amount of dust.
5. Not only did plaintiff install asbestos insulation, but he also installed block and board insulation. This insulation was used on flat surfaces around boilers and similar types of machinery. Plaintiff testified that the board insulation had to be cut to fit a particular area. The process of cutting this board was very dusty.
6. Sawing was done virtually every day and always created significant dust. Plaintiff testified that practically every day from 1964 to 1971, he worked hands on with asbestos products. Despite the fact that the removing and installing asbestos was a dusty job, he was never provided breathing protection.
7. Plaintiff's last job assignment for any defendant where he worked with asbestos products was at Sayles Biltmore Bleacheries in Asheville, North Carolina, in 1971 while plaintiff was in the employ of Carolina Industrial Insulation. This job involved removing asbestos insulation and replacing it with fiberglass insulation. The job lasted five or six weeks. Plaintiff worked most weekends at the Sayles Biltmore job. Seventy-five percent (75%) of the Sayles Biltmore job involved removal of asbestos-containing insulation.
8. In 1971, plaintiff became a field superintendent. As a field superintendent, plaintiff assigned jobs to the employees, ordered supplies, and ensured that jobs were being done properly. Plaintiff ordered asbestos products when he was a field superintendent although he never worked with the products. In this job, plaintiff would spend half of his time in the office and the other half visiting job sites. He testified that he might visit one or two sites a day but would never do any of the work or work with the materials. Plaintiff would not get too close to the work area nor would he closely inspect the insulation. Further, he never stayed at the job site for any length of time. He testified that at most, he would stay for 15 or 20 minutes. He testified that some weeks he might not go to any job sites at all. He testified that he might not go to a particular job site for a couple of weeks or longer. Mostly, he spent a day or two a week at various work sites at lengths of 15 to 20 minutes per visit.
9. When plaintiff visited the job sites between 1971 and 1973, the employees would sometimes be working with asbestos, but not always. In 1973, Plaintiff was told by his employer to not disturb asbestos products. Plaintiff testified that after 1973, he instructed all employees to avoid asbestos and not go near any insulation if they suspected it contained asbestos. He also stopped ordering asbestos products and only ordered fiberglass.
10. In 1978, Plaintiff became a branch manager and worked in an office until 1982 when he left the company. From 1978 to 1982, he never visited a work site.
11. Based on the greater weight of the evidence, the last time that plaintiff was exposed to asbestos was in 1971 at Sayles Biltmore Bleacheries. It is possible that he was exposed between 1971 and 1973; however, there is insufficient evidence to establish this fact.
12. It was stipulated during the hearing of this matter that three witnesses, Don Rowland, Earl Davis and Allen Beattie, Sr., would corroborate all of the testimony of the Plaintiff. Further, one other witness, John Arrowood, would corroborate that there was asbestos at Sayles Biltmore Bleacheries.
13. The Plaintiff has established that he was exposed for thirty days in any seven-month period from 1964 to 1971. Therefore, plaintiff has been injuriously exposed to asbestos while in the employment of defendant Carolina Industrial Insulation.
14. The record before the Commission contains numerous correspondence to and from the North Carolina Industrial Commission concerning the insurance carrier for Carolina Industrial Insulation. Correspondence from plaintiff's counsel asked for coverage for Pipe Boiler Insulation, Inc., f.k.a. Carolina Industrial Ins. Co. The North Carolina Industrial Commission responded with the carrier information for Pipe 
Boiler Insulation, Inc. The records of the North Carolina Industrial Commission show the following information concerning workers' compensation coverage for Pipe Boiler Insulation, Inc., in North Carolina:
1-04-1969 to 1-04-1973 Atlantic Mutual Insurance Company
1-04-1973 to 1-04-1974 North River Insurance Company
1-01-1974 to 1-01-1977 Continental Risk Management Service
Based on information maintained by the North Carolina Industrial Commission, there is no record of coverage for Carolina Industrial Insulation.
15. While Pipe Boiler Insulation and Carolina Industrial Insulation were different companies, there is evidence before the Commission to suggest that they were part of the same holding company. Social security records concerning plaintiff's employment history establish that from 1964 to 1982, plaintiff's employer was "Wind Up, Ltd." of Charlotte, North Carolina. This information, however, is not conclusive evidence that Carolina Industrial Insulation and Pipe Boiler Insulation are alter egos or otherwise legally the same entity. Further, this information does not conclusively establish that Atlantic Mutual Insurance Company as the insurance carrier for Pipe Boiler Insulation from 1969 to 1973 was also the carrier for Carolina Industrial Insulation. Companies can choose to have separate sibling entities insured on the same policy, or they may insure some or all of the affiliated entities on separate policies of insurance. In addition, companies can choose to insure with different insurance companies in different states. Therefore, the suggestion that Pipe Boiler Insulation and Carolina Industrial Insulation were related or otherwise affiliated does not allow the inference that Atlantic Mutual Insurance Company as the carrier for Pipe Boiler Insulation in 1971, would also insure Carolina Industrial Insulation in North Carolina during this same period.
16. Plaintiff worked in North Carolina and South Carolina from 1964 to 1971 and thus had the requisite exposure in North Carolina. Further, plaintiff's last injurious exposure to asbestos, as defined by North Carolina law, would have occurred in 1971 at Sayles Biltmore Bleacheries in Asheville, North Carolina. Since this is the date of last injurious exposure, the injury would have occurred in North Carolina and the North Carolina Industrial Commission thus has jurisdiction over the claim. It is possible that another jurisdiction, including South Carolina, may also have jurisdiction over this claim, and the finding of jurisdiction in North Carolina does not necessarily preclude jurisdiction in another forum.
17. Based on the greater weight of the competent evidence, plaintiff was an employee of Carolina Industrial Insulation in 1971, the date of injury for this claim. Plaintiff was not an employee of Pipe Boiler Insulation in 1971. The responsible employer for plaintiff's injury is Carolina Industrial Insulation.
18. Based on the evidence in the record, the Full Commission is not able to determine whether Carolina Industrial Insulation had insurance for workers' compensation which covered injuries in the State of North Carolina. The fact that Atlantic Mutual Insurance Company and other companies provided workers' compensation insurance coverage for Pipe 
Boiler Insulation is not evidence that these companies also provided workers' compensation insurance coverage in North Carolina for Carolina Industrial Insulation.
19. The insurance policy forms attached to the affidavit of David Humphries lists Pipe Boiler Insulation, Inc., as the named insured on policies with Atlantic Mutual Insurance Company. The Full Commission, however, notes that the attached declaration pages, endorsements, premium audit, and other forms are not the complete insurance policies, do not include the portions of the policies that may define other entities as additional insureds or as otherwise insured under the policy, and thereby the Full Commission cannot find, based on this information, that Atlantic Mutual Insurance Company does not have coverage for Carolina Industrial Insulation under the policies of insurance issued to Pipe Boiler Insulation or under other, unknown, insurance policies. Although the Industrial Commission currently has no competent information to allow it to conclude that Atlantic Mutual Insurance Company has coverage for Carolina Industrial Insulation for 1971, in the interest of justice and pursuant to Atlantic Mutual's Motion to Admit Subsequently Discovered Evidence and/or Depose Further Witnesses, this matter is remanded to a deputy commissioner with express instructions to permit the parties to conduct discovery relevant to the issue concerning the corporate structure of Carolina Industrial Insulation, Inc., and insurance coverage, if any, for Carolina Industrial Insulation, Inc.
20. The greater weight of the competent medical evidence is that plaintiff has sustained an occupational disease to his lungs as a result of exposure to asbestos in the course of his employment with Carolina Industrial Insulation with a date of last injurious exposure in 1971.
21. The greater weight of the evidence is that plaintiff has sustained permanent damage to his lungs for which he would be entitled to $10,000, for permanent injury to important internal organs. Said injury consists of significant asbestosis and pleural disease.
22. The greater weight of the evidence does not reveal a reduction in earnings or other evidence of disability, whether partial or total, as a result of his pulmonary injury secondary to asbestos exposure.
23. Plaintiff at all relevant times has worked in the insulation industry. There is no evidence that plaintiff has received an Order from the Industrial Commission to the effect that he be removed from an occupation that exposes him to asbestos and the greater weight of the evidence is that plaintiff is not currently, nor has he been at any relevant time during this proceeding, exposed to asbestos, and thereby there is no basis for an order to remove him from his employment.
 ***********
Based upon the foregoing, the Full Commission makes the following:
 CONCLUSIONS OF LAW
1. Plaintiff was employed by Carolina Industrial Insulation from 1964 to 1974. N.C.G.S. § 97-2(2),(3). Plaintiff's last injurious exposure to the hazards of asbestos in excess of 30 working days, or parts thereof, within seven consecutive months, occurred in 1971 while in the employ of Carolina Industrial Insulation; therefore, Carolina Industrial Insulation is the responsible employer. N.C.G.S. § 97-57.
2. Plaintiff contracted asbestosis and pleural disease as a result of his employment with Defendant-Employer. These are occupational diseases under the Act. N.C.G.S. § 97-53(24).
3. Plaintiff is not entitled to 104 weeks of compensation pursuant to Section 97-61.5 because plaintiff has not received an order of the Commission compelling him to leave employment where he is exposed to asbestos and plaintiff is not in a position where he is exposed to asbestos. See Austin v. Continental General Tire, ___ N.C. ___,553 S.E.2d 680 (2001) (per curium), reversing Court of Appeals inaccordance with dissent by Greene, J., 141 N.C. App. 397, 540 S.E.2d 824
(2000).
4. Plaintiff is entitled to all medical treatment resulting from his contraction of a compensable occupational disease to the extent that such treatment is designed to effect a cure, give relief or lessen this period of disability. N.C.G.S. §§ 97-25; 97-25.1.
5. Plaintiff is entitled to elect the greater of benefits under Sections 97-29, 97-30, and 97-31. Plaintiff may elect to receive $10,000 under Section 97-31(24). Plaintiff has not established disability to currently recover under Sections 97-29 or 97-30. Should plaintiff elect the $10,000 under Section 97-31(24), said election will preclude a recovery under Section 97-29 and/or 97-30. Gupton v. Builders Transport,320 N.C. 38, 357 S.E.2d 674 (1987); Strickland v. Burlington Industries,87 N.C. App. 507, 362 S.E.2d 394 (1987).
6. This action is remanded to a deputy commissioner for further proceedings consistent with this Opinion and Award to determine whether there is an insurance carrier for Carolina Industrial Insulation on the risk for plaintiff's injury with the last date of injurious exposure in 1971. N.C.G.S. § 97-57. Only the carrier on the risk (i.e., a carrier providing coverage for Carolina Industrial Insulation) when plaintiff was last injuriously exposed in 1971 while in the employ of Carolina Industrial Insulation can be held liable for plaintiff's workers' compensation claim. N.C.G.S. §§ 97-2(7), 97-57. Based on the record currently before the Industrial Commission there is no competent evidence to establish that Atlantic Mutual Insurance Company, North River Insurance Company, or other insurance company is responsible for this risk.
7. Atlantic Mutual Insurance Company is not estopped from denying coverage for Carolina Industrial Insulation because they did not make an appearance in this case as the carrier for this entity. Atlantic Mutual Insurance Company has appeared and represented that it holds coverage for Pipe Boiler Insulation, Inc., for periods that include 1971.
 ***********
Based upon the foregoing stipulations, findings of fact and conclusions of law, the Full Commission enters the following:
 AWARD
1. Plaintiff is entitled to payment of all past, present and future medical costs associated with his asbestosis or pleural disease.
2. Plaintiff may elect benefits under Section 97-31(24) in the amount of $10,000, or seek to establish disability and seek benefits under Sections 97-29 and/or 97-30.
3. Plaintiff is not entitled to benefits under Section 97-61.5.
4. This action is remanded to a deputy commissioner to determine the responsible carrier, if any, for plaintiff's compensable occupational disease while in the employ of Carolina Industrial Insulation. In particular, plaintiff and defendants are entitled to conduct discovery concerning: (1) the relationship between Carolina Industrial Insulation, Pipe Boiler Insulation, Inc., and Wind Up Ltd.; (2) whether insurance coverage issued for Pipe Boiler Insulation, Inc. and/or Wind Up Ltd. and/or other entity, also included coverage for Carolina Industrial Insulation, as a named, additional, or other insured status; and (3) whether Carolina Industrial Insulation was insured under other insurance policy(ies). The deputy commissioner shall promptly call a pre-hearing conference in this action, determine whether any of the parties and/or insurance companies in this action may be dismissed and whether other insurance companies should be joined, or how they shall receive notice of this proceeding should potentially liable insurance companies, or other entit(ies) that could be liable for Carolina Industrial Insulation, be identified in discovery. At the pre-hearing conference, the deputy commissioner shall determine what witnesses should be deposed prior to the deputy commissioner hearing. It is suggested that the deputy commissioner should contact the Department of Insurance and Industrial Commission of South Carolina and North Carolina and obtain information concerning the insurance coverage for 1971 for Carolina Industrial Insulation, Pipe Boiler Insulation, Inc., and Wind Up Ltd., and provide this information to the parties before the deputy commissioner hearing as a Commission exhibit. Should a new carrier or carriers be added to this action, the new carrier, upon notice to the Commission, plaintiff, and other parties, shall be allowed to present new evidence to collaterally attack the findings of the Commission herein as it relates to the compensability of plaintiff's claim and/or their liability for his injury.
 S/______________ RENE C. RIGGSBEE COMMISSIONER
CONCURRING:
 S/____________ BUCK LATTIMORE CHAIRMAN
 S/______________________ LAURA KRANIFELD MAVRETIC COMMISSIONER