***********
The Full Commission has reviewed the prior Opinion and Award based upon the record of the proceedings before Deputy Commissioner Jones and the briefs and oral arguments before the Full Commission. The appealing party has not shown good ground to reconsider the evidence; receive further evidence; rehear the parties or their representatives; or amend the Opinion and Award, except for minor modifications. Accordingly, the Full Commission affirms the Opinion and Award of Deputy Commissioner Jones, with modifications.
 ***********
The Full Commission finds as fact and concludes as matters of law the following, which were entered by the parties as:
 STIPULATIONS
1. The parties are bound by and subject to the North Carolina Workers' Compensation Act.
2. At all relevant times, an employment relationship existed between plaintiff and defendant.
3. Defendant is duly self insured.
4. Plaintiff was last injuriously exposed to asbestos during plaintiff's employment with defendant. Plaintiff was exposed to asbestos for thirty (30) days within a seven (7) month period as set forth in N.C. Gen. Stat. § 97-57.
5. At the time of hearing, plaintiff was not aware of any existing exposure to asbestos during his present employment with defendant. It is stipulated that if plaintiff is knowingly exposed to asbestos in the future, it will be the affirmative duty of plaintiff to immediately notify his supervisor as to his occupational exposure to asbestos.
6. Defendant manufactures paper and paper products, including paper for crafts, bags, boxes, and pulp for baby diapers. The approximate size of defendant's plant in Plymouth, North Carolina, is 3/4 of a mile long. The entire facility is built on approximately 350 acres and encompasses about 20 different buildings. The newest building was built in the 1960s and the vast majority of the insulation used in the original construction of the buildings contained asbestos. Steam-producing boilers are used at the facility, along with hundreds of miles of steam pipes covered with asbestos insulation. The heat coming off the steam pipes is used, among other things, to dry the wet pulp/paper.
7. Plaintiff has held a number of positions at defendant's facility. Plaintiff began working in the paint shop and eventually worked in rigging. In rigging, plaintiff was exposed to asbestos while moving machinery from place to place. Plaintiff was also exposed to asbestos when he used a chain hoist that would knock asbestos dust from overhanging asbestos-covered pipes.
8. In 1976, plaintiff began working as a millwright in the maintenance department and continued in that employment through the date of hearing with the deputy commissioner. As a millwright, plaintiff was exposed to asbestos dust through a number sources that include asbestos-containing pipe insulation, gasket material, and machine clutches.
9. During the course of his employment, plaintiff occasionally had to rip asbestos-containing insulation materials off of pipes. He also cleaned off asbestos-containing gaskets a few times every week for approximately twenty (20) years.
10. Plaintiff's income during the fifty-two (52) weeks prior to his diagnosis on December 29, 1998, was $61,768.83, which is sufficient to produce the maximum compensation rate for 1998, $532.00. By separate stipulation by counsel for both parties on August 13, 2002, it is stipulated that plaintiff's wages were sufficient to earn the maximum compensation benefits available under the North Carolina Workers' Compensation Act in the year 2000, which was $588.00.
11. Plaintiff contends that he is entitled to an award of a 10% penalty pursuant to the provisions of N.C. Gen. Stat. § 97-12, and defendant stipulated that should the claim be found compensable, defendant would agree by compromise to pay an amount of 5% of all compensation, exclusive of medical compensation, as an award of penalty pursuant thereto.
12. The parties stipulated that should N.C. Gen. Stat. § 97-60
through 97-61.7 be declared unconstitutional, additional testimony may be offered by the parties on the issues of lost of wage earning capacity and/or disability.
13. The transcript of Joseph Wendlick's testimony at civil trial, his curriculum vitae, and other documentation produced by defendant during discovery have been stipulated into evidence as Stipulated Exhibit 1.
14. The documentation from Ralph E. Whatley, M.D.; Gregory S. Pate, M.D.; Elsie Rao, M.D.; Richard C. Bernstein, M.D.; Fredrick M. Dula, M.D.; and Dennis J. Darcey, M.D.; were stipulated into evidence as Stipulated Exhibit 2.
15. Plaintiff's W-2 Form and Service Record with defendant was stipulated into evidence as Stipulated Exhibit 3.
16. Defendant agreed to withdraw all objections to the admissibility of the documents attached as exhibit in the deposition of William Stephenson.
17. All procedures used in the Weyerhaeuser asbestos medical surveillance program in the Plymouth facility were consistent with those outlines as part of the North Carolina Dusty Trades Program, which is contained in N.C. Gen. Stat. § 97-60 through 97-1.7. These procedures existed during plaintiff's employment with defendant.
18. The medial monitoring procedures used in defendant's asbestos medical surveillance program were the same in all Weyerhaeuser plants in the State of North Carolina.
19. The issues before the Full Commission are: (i) does plaintiff suffer from a compensable occupational disease; (ii) if so, what compensation, if any is due plaintiff; (iii) is plaintiff entitled to attorney's fees for the unreasonable defense of this case; (iv) whether N.C. Gen. Stat. §§ 97-60 through 97-61.7 apply to plaintiff's claim and whether these statutes are in violation of the Constitutions of the United States and North Carolina; (v) whether plaintiff is engaged in an occupation which has been found by the Industrial Commission to expose employees to the hazards of asbestos under the provisions of N.C. Gen. Stat. §§ 97-60 through 97-61.7.
 *********** EVIDENTIARY RULINGS
The objections raised in the depositions of Richard C. Bernstein, M.D., Frederick Mast Dula, M.D., and William H. Stephenson, are OVERRULED.
 ***********
Based upon all of the competent evidence of record and reasonable inferences flowing therefrom, the Full Commission makes the following:
 FINDINGS OF FACT
1. Plaintiff has been an employee of defendant at its Plymouth, North Carolina, facility from September 1969 to the date of the hearing before the deputy commissioner and continuing.
2. Plaintiff was exposed to asbestos dust from a number of sources, which include asbestos-containing pipe insulation, gasket material, and machine clutches, while working at defendant's facility. Plaintiff was required to remove asbestos-containing materials off of pipes and had to clean off asbestos-containing gaskets a few times every week for approximately twenty (20) years.
3. Plaintiff was exposed to asbestos-containing materials on a regular basis for more than thirty (30) working days or parts thereof within seven (7) consecutive months from 1969 through the present.
4. Dennis Darcey, M.D., diagnosed plaintiff with asbestosis on December 29, 1998. Dr. Darcey's diagnosis was based on plaintiff's history of exposure to asbestos, an ILO chest x-ray B read showing pleural and interstitial changes consistent with asbestos exposure, and a high resolution CT showing pleural and interstitial changes consistent with asbestos exposure and asbestosis.
5. Fred Dula, M.D., reviewed a CT scan and chest x-ray dated February 28, 1998, and determined there were mild pleural and interstitial changes that would be consistent with asbestosis.
6. Elsie Rao, M.D., concluded that plaintiff's significant exposure history was consistent with the diagnosis of interstitial fibrosis due to asbestosis.
7. Richard C. Bernstein, M.D., found parenchymal abnormalities consistent with pneumoconiosis on plaintiff's chest x-ray.
8. Ralph E. Whatley, M.D., preformed the advisory medical evaluation and determined plaintiff does have asbestosis.
9. Plaintiff developed asbestosis, an occupational disease, as a result of his employment with defendant.
10. Plaintiff's employment with defendant placed him at an increased risk of developing asbestosis as compared to members of the general public.
11. Plaintiff suffers from asbestos-related pleural disease, which placed him at an increased risk of developing asbestosis as compared to members of the general public. Plaintiff was last injuriously exposed to asbestos while employed with defendant and developed occupational diseases as a result of his many years of exposure to asbestos while employed by defendant.
12. Plaintiff's pulmonary impairment is permanent and is likely to progress. Plaintiff would benefit from medical monitoring, evaluation, and some treatment in the future as result of his asbestosis and asbestos-related pleural disease.
13. Defendant's Plymouth facility was found to have high levels of friable asbestos dust by their own Industrial Hygienist, Joseph Wendlick. As a result of Mr. Wendlick's findings, an asbestos medical monitoring program was initiated to comply with the dusty trade provisions of N.C. Gen. Stat. §§ 97-60 through 97-61.7.
14. Plaintiff's wages were sufficient to earn the maximum compensation benefits available under the North Carolina Workers' Compensation Act in the year 2000, which was $588.00. Deputy Commissioner Jones ordered plaintiff removed from further exposure to asbestosis by his Opinion and Award filed February 27, 2001.
 ***********
Based upon the foregoing stipulations and findings of fact, the Full Commission reaches the following:
 CONCLUSIONS OF LAW
1. Plaintiff contracted the occupational diseases of asbestosis and asbestos-related pleural disease as a result of his employment with defendant. N.C. Gen. Stat. §§ 97-53(24) and 97-62.
2. Plaintiff was last injuriously exposed to the hazards of asbestos dust while employed by defendant, and for as much as 30 days or parts thereof, within seven consecutive months, which exposure proximately augmented his asbestosis. N.C. Gen. Stat. § 97-57; Clark v. ITTGrinnell Industrial Piping, Inc., 141 N.C. App. 417, 539 S.E.2d 369
(2000); Haynes v. Feldspar Producing Co., 222 N.C. 163, 22 S.E.2d 275
(1942); Barber v. Babcock Wilcox Construction Company,101 N.C. App. 564, 400 S.E.2d 735 (1991).
3. N.C. Gen. Stat. § 97-61.5 provides in pertinent part that following a first hearing determination by the Industrial Commission that a claimant has asbestosis, based upon either medical evidence or by agreement of the parties, the Commission "shall by order remove the employee from any occupation which exposes him to the hazards of asbestosis . . ." and that upon removal the employee shall be entitled to "weekly compensation equal to sixty-six and two-thirds percent of his average weekly wages . . . which compensation shall continue for a period of 104 weeks." Accordingly, the Commission hereby issues an Order of Removal. Id. The Order of Removal does not constitute an order removing plaintiff from his employment with defendant, but plaintiff is ordered removed from any occupational exposure to asbestos for the remainder of his employment.
4. While it has been determined that a retiree who is no longer employed by the asbestos-exposing industry is not entitled to an order of removal and the subsequent award because he no longer faces the possibility of exposure, see Austin v. General Tire, 354 N.C. 344,553 S.E.2d 680 (2001), in this case plaintiff remains in defendant's employ. It has long been recognized that the purpose of the order of removal is not only to stop continuing exposure of the employee to asbestos fibers, but also to ensure that the employee who continues to work avoids any future exposure. See Roberts v. Southeastern Magnesia andAsbestos Co., 61 N.C. App. 706, 301 S.E.2d 742 (1983). It has also long been recognized that the award of 104 weeks of compensation has the additional purpose to compensate the employee for the incurable nature of the disease. Honeycutt v. Carolina Asbestos Co., 235 N.C. 471,70 S.E.2d 426 (1952).
5. The legislative intent of Sections 97-61.1 through 97-61.7 of the North Carolina General Statutes is to promote workplace safety by encouraging employees to remove themselves from further injurious exposures. Removal from further exposure to the hazards of asbestos can be accomplished by removal from the hazard as opposed to removal from the employment. Austin v. General Tire, 141 N.C. App. 397, 540 S.E.2d 824
(2000), rev'd on other grounds, 354 N.C. 344, 553 S.E.2d 680 (2001);Roberts v. Southeastern Magesia and Asbestos Co., 61 N.C. App. 706,301 S.E.2d 742 (1983); N.C.G.S. § 97-53(28)(i);29 C.F.R. § 1910.134.
6. Pursuant to N.C. Gen. Stat. § 97-61.5, the weekly amount of plaintiff's 104 weeks of compensation is to be based upon his "average weekly wages before removal from the industry, but no more than the amount established annually to be effective October 1 as provided in G.S. § 97-29. . . ." The parties have stipulated that plaintiff's wages were sufficient to entitle him to the maximum compensation rate permitted under the Act for the year 2000, when plaintiff was first ordered removed. Therefore, plaintiff is entitled to 104 weeks of compensation as a result of the order of removal at the weekly benefit rate of $588.00. N.C. Gen. Stat. § 97-61.5; Roberts v. SoutheasternMagnesia and Asbestos Co., 61 N.C. App. 706, 301 S.E.2d 742 (1983).
7. The issue of the constitutionality of N.G. Gen. Stat. §§ 97-60 etseq., has been raised by defendant and ruled upon by the North Carolina Court of Appeals. In Jones v. Weyerhaeuser Co., 141 N.C. App. 482,539 S.E.2d 380 (2000), disc. review denied, 353 N.C. 525, 549 S.E.2d 858
(2001), and in Clark v. ITT Grinnell Industrial Piping, Inc.,141 N.C. App. 417, 539 S.E.2d 369 (2000), the Court ruled unanimously that the provisions of N.C. Gen. Stat. § 97-61.5 are constitutional.
8. Plaintiff is entitled to have defendant pay for such medical expenses incurred or to be incurred as a result of plaintiff's asbestos related pleural disease and asbestosis as may be required to monitor, provide relief, effect a cure, or lessen plaintiff's period of disability. N.C. Gen. Stat. §§ 97-25, and 97-59.
9. Plaintiff is entitled to undergo subsequent examinations as provided by law, pursuant to the provisions of N.C. Gen. Stat. §§ 97-61.1, etseq., and is further entitled to any additional benefits due to plaintiff, which shall be determined after additional examinations and hearings.
10. Defendant stipulated that, should the Industrial Commission determine that plaintiff contracted the occupational disease asbestosis during the course and scope of his employment with defendant, defendant would waive further proof needed under N.C. Gen. Stat. § 97-12 (that the injury is caused by the willful failure of the employer to comply with any statutory requirement) and, in compromise of this issue, would accept a 5% penalty against all compensation due other than medical compensation. The Industrial Commission has so determined and defendant's offer of a compromise 5% penalty is deemed appropriate.
 *********** ORDER OF REMOVAL
Plaintiff is hereby ordered removed from any occupation that further exposes him to the hazards of asbestos. N.C. Gen. Stat. §97-61.5(b).
 ***********
Based upon the foregoing findings of fact and conclusions of law, the undersigned enters the following:
 AWARD
1. Defendant shall pay to plaintiff compensation for 104 weeks as a result of his contraction of asbestosis, and asbestos-related pleural disease while employed by defendant and as a consequence of the Industrial Commission's Order of Removal, at a weekly rate of $588.00, commencing on December 29, 1998. Said sum shall be paid in a lump sum to plaintiff without commutation, subject to the attorney's fee approved herein.
2. Defendant shall pay an additional weekly sum of 5% of the weekly compensation awarded in Paragraph 1 above to plaintiff, which shall also be paid in a lump sum. As per agreement of the parties, defendant shall also pay a 10% late penalty pursuant to N.C. Gen. Stat. § 97-18.
3. Defendant additionally shall pay interest in the amount of 8% per annum on this award from the date of the initial hearing on this claim, August 17, 2000, until paid in full. The interest shall be paid in full to the claimant and is not subject to attorneys' fees. N.C. Gen. Stat. § 97-86.2.
4. Defendant shall pay all medical expenses incurred or to be incurred when bills for the same have been approved, in accordance with the provisions of the Act.
5. Plaintiff shall undergo additional examinations as provided by law.
6. A reasonable attorney's fee of 25% of the compensation due plaintiff as was awarded in paragraphs 1 and 2 above is approved for plaintiff's counsel. Defendant shall deduct 25% of the lump sum otherwise due plaintiff shall pay such 25% directly to plaintiff's counsel.
7. The Commission hereby retains jurisdiction in this matter to address the issue of permanent impairment, as plaintiff has not undergone the additional panel examination as required by law for such determination. Upon completion of such examinations, should the parties be unable to agree on what additional compensation, if any, is due, the parties may request a hearing before this Commission on this matter.
8. Defendant shall pay the costs of this proceeding.
 *********** ORDER REMANDING
This claim is hereby remanded to a deputy commissioner for further hearing, if necessary, following subsequent examinations as required under N.C. Gen. Stat. § 97-61 et seq. Plaintiff's eligibility for further indemnity compensation under the Act beyond the 104 weeks awarded herein and any other issues in controversy are hereby held in abeyance pending the outcome of further hearings.
This 16th day of October, 2002.
 S/_____________ THOMAS J. BOLCH COMMISSIONER
CONCURRING:
 S/___________________ BERNADINE S. BALLANCE COMMISSIONER
DISSENTING:
 S/_______________ DIANNE C. SELLERS COMMISSIONER