***********
The Full Commission has reviewed the prior Opinion and Award based upon the record of the proceedings before Deputy Commissioners Berger and Holmes and the briefs and oral arguments before the Full Commission. The appealing party has not shown good ground to reconsider the evidence; receive further evidence; rehear the parties or their representatives; or amend the Opinion and Award, except for minor modifications. Accordingly, the Full Commission affirms the Opinion and Award of former Deputy Commissioner Holmes, with modifications.
 ***********
The Full Commission finds as fact and concludes as matters of law the following, which were entered by the parties as:
 STIPULATIONS
1. The parties are subject to the North Carolina Workers Compensation Act.
2. Defendant was duly self insured.
3. An employee-employer relationship existed between the parties at all relevant times. Plaintiff was employed by defendant at its facility in Plymouth, North Carolina, from January 5, 1959, to September 26, 1960; September 2, 1962, to February 25, 1963; April 9 to June 29, 1965; and February 8, 1968 to the time of the hearing before the deputy commissioner and continuing.
4. Plaintiff was last injuriously exposed to asbestos during plaintiff's employment with defendant, and specifically, plaintiff was exposed to asbestos for thirty (30) days within a seven month period, as set forth in N.C. Gen. Stat. § 97-57.
5. Plaintiff's income during the fifty-two (52) weeks prior to his diagnosis on December 9, 1997, was $67,074.77, which is sufficient to produce the maximum compensation rate for 1997, $512.00. By separate stipulation by counsel for both parties on August 13, 2002, it is stipulated that plaintiff's wages were sufficient to earn the maximum compensation benefits available under the North Carolina Workers' Compensation Act in the year 2000, which was $588.00.
6. Plaintiff contends that he is entitled to an award of a 10% penalty pursuant to the provisions of N.C. Gen. Stat. § 97-12, and defendant stipulated that should the claim be found compensable, defendant would agree by compromise to pay an amount of 5% of all compensation, exclusive of medical compensation, as an award of penalty pursuant thereto.
7. Should plaintiff be awarded compensation, the undersigned may include language removing plaintiff from further exposure pursuant to N.C. Gen. Stat. § 97-62-5(b).
8. Should the undersigned determine N.C. Gen. Stat. §§ 97-60 through97-61.7 to be unconstitutional, additional testimony could be offered by the parties on the issues of loss of wage earning capacity and/or disability.
9. The contested issues for determination are:
 A. Does plaintiff suffer from a compensable occupational disease and/or diseases? If so, what disease and/or asbestos-related diseases?
 B. What benefits, monetary and/or medical, is plaintiff entitled to receive, if any?
 C. Whether plaintiff shall be entitled to attorney fees for the unreasonable defense of this matter.
 D. Does N.C. Gen. Stat. §§ 97-60 through 97-61.7 apply to plaintiff's claim for benefits, and regardless, are these statutes in violation of the Constitutions of the United States and North Carolina?
 ***********
Based upon all of the competent evidence of record and reasonable inferences flowing therefrom, the Full Commission makes the following:
 FINDINGS OF FACT
1. Plaintiff has been employed by defendant for more than thirty-eight (38) years.
2. On December 9, 1997, plaintiff was examined by Dr. Dennis Darcey of the Division of Occupational and Environmental Medicine of Duke University Medical Center for complaints of shortness of breath that had progressed over five years. Plaintiff was exposed to asbestos for thirty years in his job as a pipe fitter with defendant. Based upon plaintiff's work history, his examination of plaintiff, and B-read chest x-rays interpreted by Dr. Fred Dula, Dr. Darcey diagnosed plaintiff with asbestosis and asbestos-related pleural changes.
3. On May 17, 1999, Dr. Clinton D. Young performed the Advisory Medical Panel examination of plaintiff at the request of the Industrial Commission. Dr. Young examined plaintiff, ordered and reviewed pulmonary function tests and chest x-rays, and reviewed plaintiff's medical records and B-read reports from 1991 and 1997. Dr. Young concluded that plaintiff had an occupational exposure to asbestos sufficient to put him at risk for developing clinical disease asbestosis. Based upon plaintiff's history of exposure along with radiological changes, Dr. Young opined that it is more probable than not, and significantly likely, that plaintiff has very mild asbestosis and the Full Commission finds as fact that plaintiff does suffer from the occupational disease asbestosis as a result of his work with defendant. Dr. Young recommended continued medical follow up and that plaintiff not work in an asbestosis environment without full formal protection.
4. Dr. Richard Bernstein, who is board-certified in internal medicine, pulmonary medicine, and critical care medicine, and is a certified B-reader, evaluated three different sets of chest x-rays from plaintiff, dated July 19, 1997, August 28, 1999, and October 1, 1999, as well as a CT scan taken on July 19, 1997. As testified by Dr. Bernstein and as found by the Full Commission to be fact, the chest x-rays and the CT scan showed changes consistent with the disease of asbestosis.
5. Dr. Dula performed B-readings on the July 19, 1997, x-ray and CT scan and an October 1, 1999, x-ray. He found bilateral interstitial changes in the lower lung lobes on the 1997 x-ray and CT scan that are consistent with fibrosis of asbestosis. He also found mild pleural abnormalities on the 1997 chest x-ray. Additionally, Dr. Dula found changes on the 1999 x-ray that are consistent with the pneumoconiosis of asbestosis and asbestos-related pleural disease. The Full Commission finds that these findings are, indeed, the facts pertaining to plaintiff's compensable occupational disease of asbestosis.
6. Dr. Paul C. Venizelos, another certified B-reader, evaluated the July 19, 1997, and the October 1, 1999, x-rays of plaintiff and noted parenchymal and pleural abnormalities consistent with the pneumoconiosis of asbestosis. As reported by Dr. Venizelos, the findings of the x-rays, along with plaintiff's history of exposure to asbestos dust, are consistent with the diagnosis of asbestosis and asbestos-related pleural fibrosis.
7. Dr. Robert Shaw reviewed a baseline chest x-ray of plaintiff that was ordered by defendant in July 1999, which revealed pleural thickening. Dr. Shaw noted plaintiff's long-term exposure to asbestos and concluded that the pleural thickening was due to asbestos exposure. Dr. Shaw reviewed chest x-rays ordered by defendant in June 1992 and September 1994 with similar findings.
8. On the contrary, Dr. Allen Hayes, board-certified in internal and pulmonary medicine, and a certified B-reader, reviewed all of plaintiff's x-rays and CT scans and reported no abnormalities consistent with asbestosis and asbestos-related pleural disease.
9. The greater weight of the evidence establishes that plaintiff developed asbestosis and asbestos-related pleural disease as a result of his employment with defendant, and that plaintiff's employment with defendant placed him at an increased risk of developing the diseases as compared to members of the general public.
10. Plaintiff's condition is permanent and likely to progress. As a result, he would benefit from medical monitoring, evaluation, and treatment in the future. Such medical attention is reasonably necessary to affect a cure, give relief, and lessen any period of disability.
11. Plaintiff's wages were sufficient to earn the maximum compensation benefits available under the North Carolina Workers' Compensation Act in the year 2000, which was $588.00. Deputy Commissioner Holmes ordered plaintiff removed from further exposure to asbestosis by his Opinion and Award filed August 2, 2000.
 ***********
Based upon the foregoing stipulations and findings of fact, the Full Commission reaches the following:
 CONCLUSIONS OF LAW
1. Plaintiff contracted the occupational diseases of asbestosis and asbestos-related pleural disease as a result of his employment with defendant. N.C. Gen. Stat. §§ 97-53(24) and 97-62.
2. Plaintiff was last injuriously exposed to the hazards of asbestos dust while employed by defendant, and for as much as 30 days or parts thereof, within seven consecutive months, which exposure proximately augmented his asbestosis. N.C. Gen. Stat. § 97-57; Clark v. ITTGrinnell Industrial Piping, Inc., 141 N.C. App. 417, 539 S.E.2d 369
(2000); Haynes v. Feldspar Producing Co., 222 N.C. 163, 22 S.E.2d 275
(1942); Barber v. Babcock Wilcox Construction Company,101 N.C. App. 564, 400 S.E.2d 735 (1991).
3. N.C. Gen. Stat. § 97-61.5 provides in pertinent part that following a first hearing determination by the Industrial Commission that a claimant has asbestosis, based upon either medical evidence or by agreement of the parties, the Commission "shall by order remove the employee from any occupation which exposes him to the hazards of asbestosis . . ." and that upon removal the employee shall be entitled to "weekly compensation equal to sixty-six and two-thirds percent of his average weekly wages . . . which compensation shall continue for a period of 104 weeks." Accordingly, the Commission hereby issues an Order of Removal. Id. The Order of Removal does not constitute an order removing plaintiff from his employment with defendant, but plaintiff is ordered removed from any occupational exposure to asbestos for the remainder of his employment.
4. While it has been determined that a retiree who is no longer employed by the asbestos-exposing industry is not entitled to an order of removal and the subsequent award because he no longer faces the possibility of exposure, see Austin v. General Tire, 354 N.C. 344,553 S.E.2d 680 (2001), in this case plaintiff remains in defendant's employ. It has long been recognized that the purpose of the order of removal is not only to stop continuing exposure of the employee to asbestos fibers, but also to ensure that the employee who continues to work avoids any future exposure. See Roberts v. Southeastern Magnesia andAsbestos Co., 61 N.C. App. 706, 301 S.E.2d 742 (1983). It has also long been recognized that the award of 104 weeks of compensation has the additional purpose to compensate the employee for the incurable nature of the disease. Honeycutt v. Carolina Asbestos Co., 235 N.C. 471,70 S.E.2d 426 (1952).
5. The legislative intent of Sections 97-61.1 through 97-61.7 of the North Carolina General Statutes is to promote workplace safety by encouraging employees to remove themselves from further injurious exposures. Removal from further exposure to the hazards of asbestos can be accomplished by removal from the hazard as opposed to removal from the employment. Austin v. General Tire, 141 N.C. App. 397, 540 S.E.2d 824
(2000), rev'd on other grounds, 354 N.C. 344, 553 S.E.2d 680 (2001);Roberts v. Southeastern Magesia and Asbestos Co., 61 N.C. App. 706,301 S.E.2d 742 (1983); N.C.G.S. § 97-53(28)(i);29 C.F.R. § 1910.134.
6. Pursuant to N.C. Gen. Stat. § 97-61.5, the weekly amount of plaintiff's 104 weeks of compensation is to be based upon his "average weekly wages before removal from the industry, but no more than the amount established annually to be effective October 1 as provided in G.S. § 97-29. . . ." The parties have stipulated that plaintiff's wages were sufficient to entitle him to the maximum compensation rate permitted under the Act for the year 2000, when plaintiff was first ordered removed. Therefore, plaintiff is entitled to 104 weeks of compensation as a result of the order of removal at the weekly benefit rate of $588.00. N.C. Gen. Stat. § 97-61.5; Roberts v. SoutheasternMagnesia and Asbestos Co., 61 N.C. App. 706, 301 S.E.2d 742 (1983).
7. The issue of the constitutionality of N.G. Gen. Stat. §§ 97-60 etseq., has been raised by defendant and ruled upon by the North Carolina Court of Appeals. In Jones v. Weyerhaeuser Co., 141 N.C. App. 482,539 S.E.2d 380 (2000), disc. review denied, 353 N.C. 525, 549 S.E.2d 858
(2001), and in Clark v. ITT Grinnell Industrial Piping, Inc.,141 N.C. App. 417, 539 S.E.2d 369 (2000), the Court ruled unanimously that the provisions of N.C. Gen. Stat. § 97-61.5 are constitutional.
8. Plaintiff is entitled to have defendant pay for such medical expenses incurred or to be incurred as a result of plaintiff's asbestos related pleural disease and asbestosis as may be required to monitor, provide relief, effect a cure, or lessen plaintiff's period of disability. N.C. Gen. Stat. §§ 97-25, and 97-59.
9. Plaintiff is entitled to undergo subsequent examinations as provided by law, pursuant to the provisions of N.C. Gen. Stat. §§ 97-61.1, etseq., and is further entitled to any additional benefits due to plaintiff, which shall be determined after additional examinations and hearings.
10. Defendant stipulated that, should the Industrial Commission determine that plaintiff contracted the occupational disease asbestosis during the course and scope of his employment with defendant, defendant would waive further proof needed under N.C. Gen. Stat. § 97-12 (that the injury is caused by the willful failure of the employer to comply with any statutory requirement) and, in compromise of this issue, would accept a 5% penalty against all compensation due other than medical compensation. The Industrial Commission has so determined and defendant's offer of a compromise 5% penalty is deemed appropriate.
 *********** ORDER OF REMOVAL
Plaintiff is hereby ordered removed from any occupation that further exposes him to the hazards of asbestos. N.C. Gen. Stat. § 97-61.5(b).
 ***********
Based upon the foregoing findings of fact and conclusions of law, the undersigned enters the following:
 AWARD
1. Defendant shall pay to plaintiff compensation for 104 weeks as a result of his contraction of asbestosis, and asbestos-related pleural disease while employed by defendant and as a consequence of the Industrial Commission's Order of Removal, at a weekly rate of $588.00, commencing on December 7, 1997. Said sum shall be paid in a lump sum to plaintiff without commutation, subject to the attorney's fee approved herein.
2. Defendant shall pay an additional weekly sum of 5% of the weekly compensation awarded in Paragraph 1 above to plaintiff, which shall also be paid in a lump sum. As per agreement of the parties, defendant shall also pay a 10% late penalty pursuant to N.C. Gen. Stat. § 97-18.
3. Defendant additionally shall pay interest in the amount of 8% per annum on this award from the date of the initial hearing on this claim, December 13, 1999, until paid in full. The interest shall be paid in full to the claimant and is not subject to attorneys' fees. N.C. Gen. Stat. § 97-86.2.
4. Defendant shall pay all medical expenses incurred or to be incurred when bills for the same have been approved, in accordance with the provisions of the Act.
5. Plaintiff shall undergo additional examinations as provided by law.
6. A reasonable attorney's fee of 25% of the compensation due plaintiff as was awarded in paragraphs 1 and 2 above is approved for plaintiff's counsel. Defendant shall deduct 25% of the lump sum otherwise due plaintiff shall pay such 25% directly to plaintiff's counsel.
7. The Commission hereby retains jurisdiction in this matter to address the issue of permanent impairment, as plaintiff has not undergone the additional panel examination as required by law for such determination. Upon completion of such examinations, should the parties be unable to agree on what additional compensation, if any, is due, the parties may request a hearing before this Commission on this matter.
8. Defendant shall pay the costs of this proceeding.
 *********** ORDER REMANDING
This claim is hereby remanded to a deputy commissioner for further hearing, if necessary, following subsequent examinations as required under N.C. Gen. Stat. § 97-61 et seq. Plaintiff's eligibility for further indemnity compensation under the Act beyond the 104 weeks awarded herein and any other issues in controversy are hereby held in abeyance pending the outcome of further hearings.
This 15th day of October, 2002.
 S/_____________ THOMAS J. BOLCH COMMISSIONER
CONCURRING:
 S/___________________ BERNADINE S. BALLANCE COMMISSIONER
DISSENTING:
 S/_______________ DIANNE C. SELLERS COMMISSIONER