***********
The Full Commission has reviewed the prior Opinion and Award based upon the record of the proceedings before Deputy Commissioner Baines and the briefs and oral arguments before the Full Commission. The appealing party has not shown good ground to reconsider the evidence; receive further evidence; rehear the parties or their representatives; or amend the Opinion and Award, except for minor modifications. Accordingly, the Full Commission affirms the Opinion and Award of Deputy Commissioner Baines, with modifications.
 ***********
The Full Commission finds as fact and concludes as matters of law the following, which were entered by the parties as:
 STIPULATIONS
1. The parties are bound by and subject to the North Carolina Workers' Compensation Act.
2. At all relevant times, an employment relationship existed between plaintiff and defendant.
3. Defendant is duly self insured.
4. Plaintiff was last injuriously exposed to asbestos during plaintiff's employment with defendant. Plaintiff was exposed to asbestos for thirty (30) days within a seven (7) month period as set forth in N.C. Gen. Stat. § 97-57.
5. Plaintiff's income during the fifty-two (52) weeks prior to his diagnosis on December 10, 1997, was $60,000.00, which is sufficient to produce the maximum compensation rate for 1997, $512.00. By separate stipulation by counsel for both parties on August 13, 2002, it is stipulated that plaintiff's wages were sufficient to earn the maximum compensation benefits available under the North Carolina Workers' Compensation Act in the year 2000, which was $588.00.
6. Plaintiff contends that he is entitled to an award of a 10% penalty pursuant to the provisions of N.C. Gen. Stat. § 97-12, and defendant stipulated that should the claim be found compensable, defendant would agree by compromise to pay an amount of 5% of all compensation, exclusive of medical compensation, as an award of penalty pursuant thereto.
7. Should plaintiff's claim be found compensable, the Commission may include language removing plaintiff from further exposure pursuant to N.C. Gen. Stat. § 97-62-5(b).
8. Should N.C. Gen. Stat. §§ 97-60 through 97-61.7 be determined unconstitutional, additional testimony may be offered by the parties on the issues of wage loss earning capacity and/or disability.
9. Plaintiff's medical records were stipulated into evidence as Stipulated Exhibit 1.
10. The issues before the undersigned are: (i) whether plaintiff suffers from a compensable occupational disease; (ii) if so, what compensation, if any, is due plaintiff; (iii) whether N.C. Gen. Stat. §§ 97-60 through 97-61.7 are constitutional; and (iv) whether plaintiff is entitled to an attorney's fee for the unreasonable defense of this matter?
 *********** EVIDENTIARY RULINGS
The objections raised in the depositions of William C. Bernstein, M.D.; Frederick Mast Dula, Jr., M.D.; D. Allen Hayes, M.D.; and James C. Johnson, M.D., are OVERRULED.
 ***********
Based upon all of the competent evidence of record and reasonable inferences flowing therefrom, the Full Commission makes the following:
 FINDINGS OF FACT
1. At the time of the hearing, plaintiff was 57 years old and was employed by defendant at its Plymouth, North Carolina, facility. Plaintiff has been employed with defendant from April 8, 1965 through the hearing before the deputy commissioner and continuing.
2. Initially, plaintiff worked as a paper machine oiler. Plaintiff transferred to the carpenter shop as an apprentice and eventually worked as a carpenter. Throughout this time, plaintiff was exposed to asbestos at various places throughout the facility.
3. Plaintiff's job responsibility as a carpenter included sawing and removing old corrugated asbestos sheets that were approximately 4 feet wide and 6 to twelve 12 feet long. Plaintiff also repaired and replaced asbestos hoods on paper machines that were approximately 12 to 16 feet wide and 160 to 300 feet long.
4. While working in the bleach plant, plaintiff removed asbestos ceiling tiles, put up new tracking, and replaced it with new asbestos ceiling tiles. Plaintiff would saw down asbestos sheets to the correct size for the tracking.
5. Several years later, plaintiff removed the ceiling tiles that he had previously replaced after they had deteriorated. Plaintiff scraped up asbestos floor tiles and replaced the transite asbestos boards on the hoods of the five black liquor washers.
6. Plaintiff's duties as a carpenter also included building scaffolds for the pipe fitters so they could reach and remove asbestos insulation on the pipes. Carpenters would work in the same areas as the pipe fitters while the fitters tore off asbestos insulation. Plaintiff would also climb on asbestos insulated pipes in order to build scaffolding. Plaintiff used compressed air to get the asbestos dust off of his clothes, which would be covered with particles from the insulation.
7. Plaintiff also worked with other carpenters in the boiler and turbine room.
8. Defendant did not provide plaintiff with respiratory equipment to protect him from exposure to asbestos.
9. Plaintiff was exposed to asbestos containing materials on a regular basis for more than thirty days or parts thereof inside of seven consecutive months from 1965 until the present.
10. Plaintiff did smoke for one or two years as a teenager, but has been a nonsmoker since that time.
11. Plaintiff has suffered from shortness of breath since 1988 and noticed a rapid progression of his breathing difficulty over the last few years. Plaintiff has been evaluated and several physicians have examined his medical documentation. Douglas G. Kelling, M.D., diagnosed plaintiff with asbestosis and asbestos-related pleural disease.
12. Dennis Darcy, M.D., also determined, and the Full Commission finds as fact, that plaintiff suffers from asbestosis and asbestos-related pleural changes based on plaintiff's history of exposure to asbestos while working for defendant.
13. A CT scan and chest x-ray were interpreted by Fred M. Dula, M.D. Dr. Dula indicated there were interstitial and pleural changes that would be consistent with mild asbestosis.
14. James Johnson, M.D., also interpreted plaintiff's chest x-ray. Dr. Johnson concluded, and the Full Commission finds as fact, that there were parenchymal abnormalities that were consistent with asbestosis.
15. Philip Lucas, M.D., also reviewed plaintiff's chest film indicating that plaintiff's bilateral interstitial fibrotic changes were consistent with asbestosis.
16. Richard C. Bernstein, M.D., interpreted a chest x-ray dated August 28, 1999. Dr. Bernstein concluded there were parenchymal abnormalities present consistent with pneumoconiosis.
17. Allen Hayes, M.D., conducted a B-read review of plaintiff's chest x-ray dated July 17, 1997. While Dr. Hayes did not examine plaintiff, Dr. Hayes is of the opinion that plaintiff suffers from asthma.
18. Plaintiff developed asbestosis as a result of his employment with defendant, which placed him at an increased risk of developing asbestos as compared to members of the general public.
19. Plaintiff also suffers from asbestos-related pleural disease as a result of his employment with defendant and his employment with defendant also placed him at an increased risk of developing the disease as compared to members of the general public.
20. Plaintiff was last injuriously exposed to asbestos while employed by defendant and developed the occupational diseases of asbestosis and asbestos-related pleural disease as a result of his many years of exposure to asbestos at defendant's facility.
21. Plaintiff is still employed with defendant and his pulmonary impairment due to asbestos is permanent and is likely to continue to decline due to the progressive nature of the disease.
22. Plaintiff would benefit from medical monitoring, evaluation, and some treatment in the future for his asbestosis and asbestos-related pleural disease.
23. Plaintiff's wages were sufficient to earn the maximum compensation benefits available under the North Carolina Workers' Compensation Act in the year 2000, which was $588.00. Deputy Commissioner Baines ordered plaintiff removed from further exposure to asbestosis by his Opinion and Award filed August 31, 2000.
 ***********
Based upon the foregoing stipulations and findings of fact, the Full Commission reaches the following:
 CONCLUSIONS OF LAW
1. Plaintiff contracted the occupational diseases of asbestosis and asbestos-related pleural disease as a result of his employment with defendant. N.C. Gen. Stat. §§ 97-53(24) and 97-62.
2. Plaintiff was last injuriously exposed to the hazards of asbestos dust while employed by defendant, and for as much as 30 days or parts thereof, within seven consecutive months, which exposure proximately augmented his asbestosis. N.C. Gen. Stat. § 97-57; Clark v. ITTGrinnell Industrial Piping, Inc., 141 N.C. App. 417, 539 S.E.2d 369
(2000); Haynes v. Feldspar Producing Co., 222 N.C. 163, 22 S.E.2d 275
(1942); Barber v. Babcock Wilcox Construction Company,101 N.C. App. 564, 400 S.E.2d 735 (1991).
3. N.C. Gen. Stat. § 97-61.5 provides in pertinent part that following a first hearing determination by the Industrial Commission that a claimant has asbestosis, based upon either medical evidence or by agreement of the parties, the Commission "shall by order remove the employee from any occupation which exposes him to the hazards of asbestosis . . ." and that upon removal the employee shall be entitled to "weekly compensation equal to sixty-six and two-thirds percent of his average weekly wages . . . which compensation shall continue for a period of 104 weeks." Accordingly, the Commission hereby issues an Order of Removal. Id. The Order of Removal does not constitute an order removing plaintiff from his employment with defendant, but plaintiff is ordered removed from any occupational exposure to asbestos for the remainder of his employment.
4. While it has been determined that a retiree who is no longer employed by the asbestos-exposing industry is not entitled to an order of removal and the subsequent award because he no longer faces the possibility of exposure, see Austin v. General Tire, 354 N.C. 344,553 S.E.2d 680 (2001), in this case plaintiff remains in defendant's employ. It has long been recognized that the purpose of the order of removal is not only to stop continuing exposure of the employee to asbestos fibers, but also to ensure that the employee who continues to work avoids any future exposure. See Roberts v. Southeastern Magnesia andAsbestos Co., 61 N.C. App. 706, 301 S.E.2d 742 (1983). It has also long been recognized that the award of 104 weeks of compensation has the additional purpose to compensate the employee for the incurable nature of the disease. Honeycutt v. Carolina Asbestos Co., 235 N.C. 471,70 S.E.2d 426 (1952).
5. The legislative intent of Sections 97-61.1 through 97-61.7 of the North Carolina General Statutes is to promote workplace safety by encouraging employees to remove themselves from further injurious exposures. Removal from further exposure to the hazards of asbestos can be accomplished by removal from the hazard as opposed to removal from the employment. Austin v. General Tire, 141 N.C. App. 397, 540 S.E.2d 824
(2000), rev'd on other grounds, 354 N.C. 344, 553 S.E.2d 680 (2001);Roberts v. Southeastern Magesia and Asbestos Co., 61 N.C. App. 706,301 S.E.2d 742 (1983); N.C.G.S. § 97-53(28)(i);29 C.F.R. § 1910.134.
6. Pursuant to N.C. Gen. Stat. § 97-61.5, the weekly amount of plaintiff's 104 weeks of compensation is to be based upon his "average weekly wages before removal from the industry, but no more than the amount established annually to be effective October 1 as provided in G.S. § 97-29. . . ." The parties have stipulated that plaintiff's wages were sufficient to entitle him to the maximum compensation rate permitted under the Act for the year 2000, when plaintiff was first ordered removed. Therefore, plaintiff is entitled to 104 weeks of compensation as a result of the order of removal at the weekly benefit rate of $588.00. N.C. Gen. Stat. § 97-61.5; Roberts v. SoutheasternMagnesia and Asbestos Co., 61 N.C. App. 706, 301 S.E.2d 742 (1983).
7. The issue of the constitutionality of N.G. Gen. Stat. §§ 97-60 etseq., has been raised by defendant and ruled upon by the North Carolina Court of Appeals. In Jones v. Weyerhaeuser Co., 141 N.C. App. 482,539 S.E.2d 380 (2000), disc. review denied, 353 N.C. 525, 549 S.E.2d 858
(2001), and in Clark v. ITT Grinnell Industrial Piping, Inc.,141 N.C. App. 417, 539 S.E.2d 369 (2000), the Court ruled unanimously that the provisions of N.C. Gen. Stat. § 97-61.5 are constitutional.
8. Plaintiff is entitled to have defendant pay for such medical expenses incurred or to be incurred as a result of plaintiff's asbestos related pleural disease and asbestosis as may be required to monitor, provide relief, effect a cure, or lessen plaintiff's period of disability. N.C. Gen. Stat. §§ 97-25, and 97-59.
9. Plaintiff is entitled to undergo subsequent examinations as provided by law, pursuant to the provisions of N.C. Gen. Stat. §§ 97-61.1, etseq., and is further entitled to any additional benefits due to plaintiff, which shall be determined after additional examinations and hearings.
10. Defendant stipulated that, should the Industrial Commission determine that plaintiff contracted the occupational disease asbestosis during the course and scope of his employment with defendant, defendant would waive further proof needed under N.C. Gen. Stat. § 97-12 (that the injury is caused by the willful failure of the employer to comply with any statutory requirement) and, in compromise of this issue, would accept a 5% penalty against all compensation due other than medical compensation. The Industrial Commission has so determined and defendant's offer of a compromise 5% penalty is deemed appropriate.
 *********** ORDER OF REMOVAL
Plaintiff is hereby ordered removed from any occupation that further exposes him to the hazards of asbestos. N.C. Gen. Stat. §97-61.5(b).
 ***********
Based upon the foregoing findings of fact and conclusions of law, the undersigned enters the following:
 AWARD
1. Defendant shall pay to plaintiff compensation for 104 weeks as a result of his contraction of asbestosis, and asbestos-related pleural disease while employed by defendant and as a consequence of the Industrial Commission's Order of Removal, at a weekly rate of $588.00, commencing on December 10, 1997. Said sum shall be paid in a lump sum to plaintiff without commutation, subject to the attorney's fee approved herein.
2. Defendant shall pay an additional weekly sum of 5% of the weekly compensation awarded in Paragraph 1 above to plaintiff, which shall also be paid in a lump sum. As per agreement of the parties, defendant shall also pay a 10% late penalty pursuant to N.C. Gen. Stat. § 97-18.
3. Defendant additionally shall pay interest in the amount of 8% per annum on this award from the date of the initial hearing on this claim, October 12, 1999, until paid in full. The interest shall be paid in full to the claimant and is not subject to attorneys' fees. N.C. Gen. Stat. § 97-86.2.
4. Defendant shall pay all medical expenses incurred or to be incurred when bills for the same have been approved, in accordance with the provisions of the Act.
5. Plaintiff shall undergo additional examinations as provided by law.
6. A reasonable attorney's fee of 25% of the compensation due plaintiff as was awarded in paragraphs 1 and 2 above is approved for plaintiff's counsel. Defendant shall deduct 25% of the lump sum otherwise due plaintiff shall pay such 25% directly to plaintiff's counsel.
7. The Commission hereby retains jurisdiction in this matter to address the issue of permanent impairment, as plaintiff has not undergone the additional panel examination as required by law for such determination. Upon completion of such examinations, should the parties be unable to agree on what additional compensation, if any, is due, the parties may request a hearing before this Commission on this matter.
8. Defendant shall pay the costs of this proceeding.
 *********** ORDER REMANDING
This claim is hereby remanded to a deputy commissioner for further hearing, if necessary, following subsequent examinations as required under N.C. Gen. Stat. § 97-61 et seq. Plaintiff's eligibility for further indemnity compensation under the Act beyond the 104 weeks awarded herein and any other issues in controversy are hereby held in abeyance pending the outcome of further hearings.
This 16th day of October, 2002.
 S/_____________ THOMAS J. BOLCH COMMISSIONER
CONCURRING:
 S/___________________ BERNADINE S. BALLANCE COMMISSIONER
DISSENTING:
 S/_______________ DIANNE C. SELLERS COMMISSIONER