***********
The Full Commission has reviewed the prior Opinion and Award based upon the record of the proceedings before former Deputy Commissioner Hedrick and the briefs and oral arguments before the Full Commission. The appealing party has not shown good ground to reconsider the evidence; receive further evidence; rehear the parties or their representatives; or amend the Opinion and Award, except for minor modifications. Accordingly, the Full Commission affirms the Opinion and Award of former Deputy Commissioner Hedrick, with modifications.
 ***********
The Full Commission finds as fact and concludes as matters of law the following, which were entered by the parties as:
 STIPULATIONS
1. The parties are subject to and bound by the provisions of the North Carolina Workers' Compensation Act.
2. Plaintiff was employed by defendant at its facility in Plymouth, North Carolina, from August 8, 1956, to present.
3. Defendant was self insured during the time of plaintiff's employment with defendant.
4. Plaintiff was last injuriously exposed to asbestos during his employment with defendant. Plaintiff was exposed to asbestos for thirty (30) days within a seven month period as set out in G.S. § 97-57.
5. Defendant manufactures paper and paper products, including paper for crafts, bags, boxes, and pulp for baby diapers. The approximate size of defendant's plant in Plymouth, North Carolina, is 3/4 of a mile long. The entire facility is built on approximately 350 acres and encompasses about twenty different buildings. The newest building was constructed in the 1960's and the vast majority of the insulation used in the original construction of the buildings contained asbestos. There are steam-producing boilers used at the facility in Plymouth, North Carolina. In addition, there exist hundreds of miles of steam pipes that were covered with asbestos insulation. The heat coming off the steam pipes is used, among other things, to dry the wet pulp/paper.
6. Since 1961, plaintiff has worked for defendant as a pipe fitter. He has worked primarily in the boiler room where he replaced asbestos-containing insulation on pipes and turbines. Plaintiff was exposed to asbestos while repairing pipes and changing gaskets, which required him to remove asbestos insulation coverings. His exposure to asbestos was more intense during major shutdowns when more extensive repairs were performed. Additionally, the plaintiff would grind-off asbestos gaskets that were on pipe flanges. He also worked on the coal crushers and elevators, and was exposed to asbestos that was used as an insulating material in those areas. Plaintiff never used any kind of respiratory protection.
7. Plaintiff suffers from the occupational disease, asbestosis. He was diagnosed with asbestosis on December 9, 1997, by Dr. Dennis Darcey. This diagnosis was confirmed by a member of the North Carolina Occupational Disease Panel.
8. Plaintiff's income during the fifty-two (52) weeks prior to his diagnosis on December 9, 1997, was $52,055.40, which is sufficient to produce the maximum compensation rate for 1997, $512.00. By separate stipulation signed by counsel for both parties on August 13, 2002, it is stipulated that plaintiff's wages were sufficient to earn the maximum compensation benefits available under the North Carolina Workers Compensation Act in the year 2000, which was $588.00.
9. The parties have stipulated into evidence the following documents:
a. Plaintiffs medical records;
b. Plaintiffs W-2 Wage and Tax Statement for 1997; and,
c. The curriculum vitae of all physicians who examined plaintiff.
10. Plaintiff contends that he is entitled to an award of ten percent (10%) penalty pursuant to the provisions of N.C. Gen. Statute § 97-12, and defendant stipulated that should the claim be found compensable, defendant would agree by compromise to pay an amount of 5% of all compensation, exclusive of medical compensation, as an award of penalty pursuant thereto.
 ***********
Based upon all of the competent evidence of record and reasonable inferences flowing therefrom, the Full Commission makes the following:
 FINDINGS OF FACT
1. Plaintiff has been employed by defendant, Weyerhaeuser Company, at its facility in Plymouth, North Carolina, from August 8, 1956, until the date of the hearing before the Deputy Commissioner and continuing.
2. Plaintiff has presented convincing and undisputed evidence regarding substantial exposures to the hazards of asbestos in differing occupations throughout his employment with defendant.
3. Plaintiff has worked as a pipe fitter for defendant since 1961. He has worked primarily in the boiler room, where he replaced asbestos-containing insulation on pipes and turbines. Plaintiff was exposed to friable asbestos while repairing pipes and changing gaskets, which required that he remove asbestos insulation coverings. His exposure to asbestos was more intense during major shutdowns when more extensive repairs were performed. Additionally, the plaintiff would grind off asbestos gaskets that were on pipe flanges. He also worked on the coal crushers and elevators and was exposed to friable asbestos that was used as an insulating material in those areas. He never used any kind of respiratory protection and thus inhaled asbestosis fibers while working for defendant.
4. Defendant did not provide plaintiff any respiratory equipment to protect him from exposure to asbestos.
5. Plaintiff was exposed to asbestos-containing materials on a regular basis for more than thirty working days or parts thereof inside of seven consecutive months from 1956 until his case was heard on March 16, 2000.
6. Defendant admitted that plaintiff does suffer from asbestosis, an occupational disease.
7. The plaintiff presented to Dr. Dennis Darcey of the Division of Occupational Environmental Medicine of Duke University. Dr. Darcey's medical report, dated December 9, 1997, includes his diagnosis that the plaintiff suffers from asbestosis and asbestos related pleural changes as a consequence of the plaintiff's regular exposure to asbestos dust over the course of 30 or more years while at the place of his employment with the defendant. The Full Commission finds Dr. Darcey's diagnosis to correctly state the facts applicable to this case.
8. Dr. Darcey's diagnosis was based on the patient's history of exposure to asbestos with adequate duration of exposure and latency to develop asbestosis and an ILO chest x-ray and B-read and high-resolution CT scan of the chest showing pleural and interstitial changes consistent with asbestos exposure and asbestosis.
9. Dr. Darcey recommended that plaintiff undergo periodic monitoring for progression of asbestosis-related disease including pulmonary function and chest x-ray, because future deterioration in pulmonary function can occur even after exposure has ceased. He further recommended that plaintiff should avoid further exposure to asbestos dust. Additionally, plaintiff has an increased risk of developing lung cancer and mesothelioma as a result of his asbestos exposure, as opposed to non-exposed individuals.
10. The medical tests and reports of Drs. Curseen, Dula, Merchant, Bernstein, Rao, and Kunstling all further confirm Dr. Darcey's diagnosis that the plaintiff suffers from asbestosis and asbestos related pleural changes as a consequence of the plaintiffs regular exposure to asbestos dust over the course of 30 or more years while at the place of his employment with the defendant. The Full Commission finds as fact that plaintiff suffers from asbestosis and asbestos-related pleural changes as a consequence of the plaintiffs regular exposure to asbestos dust over the course of 30 or more years while at the place of his employment with the defendant.
11. Defendant admitted that plaintiff is suffering from asbestosis, an occupational disease, and that he was diagnosed with asbestosis and asbestos related pleural plaques while still employed by defendant.
12. Plaintiff's pulmonary impairment due to his asbestosis is permanent and likely to progress. Plaintiff would benefit from medical monitoring, evaluation, and some treatment in the future as a result of his asbestosis and his asbestos related pleural disease. Medical monitoring is further necessary due to plaintiff's risk of developing lung and other asbestos related cancers.
13. Plaintiff's wages were sufficient to earn the maximum compensation benefits available under the North Carolina Workers' Compensation Act in the year 2000, which was $588.00. Deputy Commissioner Hedrick ordered plaintiff removed from further exposure to asbestos by his Opinion and Award filed May 16, 2000.
 ***********
Based upon the foregoing stipulations and findings of fact, the Full Commission reaches the following:
 CONCLUSIONS OF LAW
1. Plaintiff contracted the occupational diseases of asbestosis and asbestos related pleural disease as a result of his employment with defendant. N.C. Gen. Stat. § 97-53(24) and § 97-62.
2. Plaintiff was last injuriously exposed to the hazards of asbestos dust while employed by defendant, and for as much as 30 days or parts thereof, within seven consecutive months, which exposure proximately augmented his asbestosis. N.C. Gen. Stat. § 97-57; Clark v. ITTGrinnell Industrial Piping, Inc., 141 N.C. App. 417, 539 S.E.2d 369
(2000); Haynes v. Feldspar Producing Co., 222 N.C. 163, 22 S.E.2d 275
(1942); Barber v. Babcock Wilcox Construction Company,101 N.C. App. 564, 400 S.E.2d 735 (1991).
3. N.C. Gen. Stat. § 97-61.5 provides in pertinent part that following a first hearing determination by the Industrial Commission that a claimant has asbestosis, based upon either medical evidence or by agreement of the parties, the Commission "shall by order remove the employee from any occupation which exposes him to the hazards of asbestosis . . ." and that upon removal the employee shall be entitled to "weekly compensation equal to sixty-six and two-thirds percent of his average weekly wages . . . which compensation shall continue for a period of 104 weeks." Accordingly, the Commission hereby issues an Order of Removal. Id. The Order of Removal does not constitute an order removing plaintiff from his employment with defendant, but plaintiff is ordered removed from any occupational exposure to asbestos for the remainder of his employment.
4. While it has been determined that a retiree who is no longer employed by the asbestos-exposing industry is not entitled to an order of removal and the subsequent award because he no longer faces the possibility of exposure, see Austin v. General Tire, 354 N.C. 344,553 S.E.2d 680 (2001), in this case plaintiff remains in defendant's employ. It has long been recognized that the purpose of the order of removal is not only to stop continuing exposure of the employee to asbestos fibers, but also to ensure that the employee who continues to work avoids any future exposure. See Roberts v. Southeastern Magnesia andAsbestos Co., 61 N.C. App. 706, 301 S.E.2d 742 (1983). It has also long been recognized that the award of 104 weeks of compensation has the additional purpose to compensate the employee for the incurable nature of the disease. Honeycutt v. Carolina Asbestos Co., 235 N.C. 471,70 S.E.2d 426 (1952).
5. The Legislative intent of Sections 97-61.1 through 97-61.7 of the North Carolina General Statutes is to promote workplace safety by encouraging employees to remove themselves from further injurious exposures. Removal from further exposure to the hazards of asbestos can be accomplished by removal from the hazard as opposed to removal from the employment. Austin v. General Tire 141 N.C. App. 397, 540 S.E.2d 824
(2000), rev'd on other grounds, 354 N.C. 344, 553 S.E.2d 680 (2001);Roberts v. Southeastern Magesia and Asbestos Co., 61 N.C. App. 706,301 S.E.2d 742 (1983); N.C.G.S. § 97-53(28)(i);29 C.F.R. § 1910.134.
6. Pursuant to N.C. Gen. Stat. § 97-61.5 the weekly amount of plaintiffs 104 weeks of compensation is to be based upon his "average weekly wages before removal from the industry, but no more than the amount established annually to be effective October 1 as provided in G.S. § 97-29 . . ." The parties have stipulated that plaintiffs wages were sufficient to entitle him to the maximum compensation rate permitted under the Act for the year 2000, when plaintiff was first ordered removed. Therefore, plaintiff is entitled to 104 weeks of compensation as a result of the order of removal at the weekly benefit rate of $588.00. N.C. Gen. Stat. § 97-61.5; Roberts v. Southeastern Magnesia andAsbestos Co., 61 N.C. App. 706, 301 S.E.2d 742 (1983).
7. Plaintiff is entitled to have defendant pay for such medical expenses incurred or to be incurred as a result of plaintiff's asbestos related pleural disease and asbestosis as may be required to monitor, provide relief, effect a cure or lessen plaintiff's period of disability. N.C. Gen. Stat. §§ 97-25, 97-59.
8. Plaintiff is entitled to undergo subsequent examinations as provided by law, pursuant to the provisions of N.C. Gen. Stat. § 97-61.1, et seq., and is further entitled to any additional benefits due to plaintiff, which shall be determined after additional examinations and hearings.
9. Defendant stipulated that, should the Industrial Commission determine that plaintiff contracted the occupational disease asbestosis during the course and scope of his employment with defendant, defendant would waive further proof needed under N.C. Gen. Stat. § 97-12 (that the injury is caused by the willful failure of the employer to comply with any statutory requirement) and, in compromise of this issue, would accept a 5% penalty against all compensation due other than medical compensation. The Industrial Commission has so determined and defendant's offer of a compromise 5% penalty is deemed appropriate.
 *********** ORDER OF REMOVAL
Plaintiff is hereby ordered removed from any occupation which further exposes him to the hazards of asbestos. N.C. Gen. Stat. § 97-61.5(b).
 ***********
Based upon the foregoing findings of fact and conclusions of law, the Full Commission enters the following:
 AWARD
1. Defendant shall pay to plaintiff compensation for 104 weeks as a result of his contraction of asbestosis, and asbestos related pleural disease while employed by defendant and as a consequence of the Industrial Commission's Order of Removal, at a weekly rate of $588.00.
2. Defendant shall pay an additional weekly sum of 5% of the weekly compensation awarded in Paragraph 1 above to plaintiff, which shall also be paid in a lump sum. As per agreement of the parties, defendant shall also pay a 10% late penalty pursuant to N.C. Gen. Stat. § 97-18.
3. Defendant additionally shall pay interest in the amount of 8% per annum on this award from the date of the initial hearing on this claim, March 16, 2000, until paid in full. The interest shall be paid in full to the claimant and is not subject to attorneys' fees. N.C. Gen. Stat. § 97-86.2.
4. Defendant shall pay all medical expenses incurred or to be incurred when bills for the same have been approved, in accordance with the provisions of the Act.
5. Plaintiff shall undergo additional examinations as provided by law.
6. A reasonable attorney's fee of 25% of the compensation due plaintiff as was awarded in paragraphs 1 and 2 above is approved for plaintiffs counsel. Defendant shall deduct 25% of the lump sum otherwise due plaintiff and shall pay such 25% directly to plaintiffs counsel.
7. The Commission hereby retains jurisdiction in this matter to address the issue of permanent impairment, as plaintiff has not undergone the additional panel examination as required by law for such determination. Upon completion of such examinations, should the parties be unable to agree on what additional compensation, if any, is due, the parties may request a hearing before this Commission on this matter.
8. Defendant shall pay the costs of this proceeding.
 ORDER REMANDING
This claim is hereby remanded to a deputy commissioner for further hearing, if necessary, following subsequent examinations as required under N.C. Gen. Stat. § 97-61 et seq. Plaintiffs eligibility for further indemnity compensation under the Act beyond the 104 weeks awarded herein and any other issues in controversy are hereby held in abeyance pending the outcome of further hearings.
This 4th day of October 2002.
 S/_____________ THOMAS J. BOLCH COMMISSIONER
CONCURRING:
 S/___________________ BERNADINE S. BALLANCE COMMISSIONER
DISSENTING:
 S/_______________ DIANNE C. SELLERS COMMISSIONER