* * * * * * * * * * * PROCEDURAL HISTORY
The Full Commission issued an Opinion and Award in this case sitting en banc on December 18, 1998. Defendant appealed this decision to the North Carolina Court of Appeals. On December 29, 2000, the Court of Appeals filed a decision (141 N.C. App. 397,540 S.E.2d 824 (2000)), affirming the Full Commission Opinion and Award, with Judge Green dissenting. The case was appealed to the North Carolina Supreme Court and, in a per curiam decision, the Court adopted Judge Green's dissent and reversed and remanded the case (354 N.C. 344, 553 S.E.2d 680 (2001)).
Upon remand, Chairman Buck Lattimore issued an Order on December 17, 2002 remanding the case to the Deputy Commissioner Section for an evidentiary hearing and issuance of an Opinion and Award on the issue of benefits to which plaintiff was entitled. Defendant filed an objection to the scheduling of a hearing before a Deputy Commissioner. By Order filed November 17, 2003, Chairman Lattimore ruled that defendant's objection was moot because neither party appealed from the Order filed December 17, 2002.
On December 29, 2003, defendant filed a second motion requesting that the Full Commission, rather than a Deputy Commissioner, hear the case on the evidence previously presented at the initial hearing. Defendant argued that the reverse and remand language of the appellate courts did not allow for a full evidentiary hearing. Plaintiff filed a response in opposition to this motion. It appears from the record that the Commission did not rule on defendant's second motion.
The case was subsequently heard by Deputy Commissioner Houser on June 5, 2004, who issued his Opinion and Award on December 16, 2004. Defendants now appeal from this Opinion and Award.
 * * * * * * * * * * * RULINGS ON PROCEDURAL MATTERS
At the first hearing in this matter, the issue was whether plaintiff was entitled to 104 weeks of compensation under N.C. Gen. Stat. § 97-61.1 et seq. The appellate courts subsequently held that plaintiff was not entitled to the 104 weeks of compensation and, therefore, plaintiff was precluded from completing his second and third panel examinations under N.C. Gen. Stat. § 97-61.1-.7. Judge Greene's dissenting opinion adopted by the Supreme Court stated that plaintiff's sole remedy for his asbestosis-related disease was provided by N.C. Gen. Stat. § 97-64. The Supreme Court remanded the case to the Industrial Commission for proceedings not inconsistent with Judge Green's dissent. The Full Commission needed additional evidence concerning plaintiff's disability, if any, to decide plaintiff's entitlement to compensation under N.C. Gen. Stat. § 97-64. It is within the Full Commission's discretion to remand the matter to a Deputy Commissioner for the taking of additional evidence, unless the Court of Appeals orders the Full Commission to hear new evidence itself. Matthews v. Charlotte-Mecklenburg Hosp. Auth.,132 N.C.App. 11, 510 S.E.2d 388 (1999); Crump v. IndependenceNissan, 112 N.C. App. 587, 436 S.E.2d 589 (1993); Joyner v.Rocky Mount Mills, 92 N.C.App. 478, 374 S.E.2d 610 (1988).
However, it was error for the Commission to order that the Deputy Commissioner issue an Opinion and Award in this matter. To avoid further delay, the Full Commission should have retained jurisdiction over the case and issued an Opinion and Award based upon the additional evidence from the hearing before Deputy Commissioner Houser. Id.
Therefore, the Full Commission VACATES that portion of Chairman Lattimore's December 17, 2002 Order concerning issuance of an Opinion and Award by the Deputy Commissioner. The Full Commission further VACATES the Opinion and Award of Deputy Commissioner Houser filed December 16, 2004 and issues the following Opinion and Award based upon the additional evidence from the Deputy Commissioner's hearing in Charlotte on June 5, 2004.
 * * * * * * * * * * *
In accordance with the directives of the North Carolina Supreme Court, the Full Commission finds as facts and concludes as matters of law the following, which were entered into by the parties at the hearing before the Deputy Commissioner and in a Pre-Trial Agreement, which was admitted into the record, marked as stipulated Exhibit (1) as:
 STIPULATIONS
1. Plaintiff and defendant are subject to and bound by the provisions of the North Carolina Workers' Compensation Act.
2. An employer-employee relationship existed between plaintiff and defendant from 1967 to 1987.
3. Defendant was self-insured at the time of plaintiff's last injurious exposure to asbestos and Gallagher Bassett is the servicing agent.
4. Plaintiff's compensation rate is $308.00 per week.
5. At the initial evidentiary hearing on May 9, 1996, the following documents were stipulated into evidence:
 a. Medical records of Dr. Stephen Proctor, Dr. Douglas G. Kelling, Jr., Dr. Michael J. Kelly, Dr. Terry W. Wallace, Dr. B. Rama Rao, Dr. Robert W. Patton, Sr., and Dr. Harold F. Snider;
 b. Plaintiff's Response to Defendant's First Set of Interrogatories dated April 27, 1995;
 c. Defendant's response to Plaintiff's First Set of Interrogatories and Request for Production and Supplemental Responses dated July 18, 1996;
 d. The asbestos permit and notification for demolition-renovation; permit N.C. 65875 dated February 10, 1995;
 e. Correspondence from Ms. Julia F. Parker to the N.C. Department of EHNR dated February 9, 1995;
 f. The February 13, 1995, Mecklenburg County Department of Environmental Protection MESHAP Notification of Demolition and Removal, and;
g. The Industrial Commission file in its entirety.
6. At the initial evidentiary hearing on May 9, 1996, the following exhibits were admitted into evidence:
 a. Plaintiff's Exhibit (1) — asbestos sampling taken from locations in the Charlotte plant on November 13, 1986 and November 14, 1986;
 b. Plaintiff's Exhibit (2) — Julia F. Parker's February 9, 1995 correspondence to MCDEP air quality section and the eight pages attached thereto;
 c. Defendant's Exhibits (1) through (3) — photographs of the three roll calendar area;
d. Defendant's Exhibit (4);
e. Defendant's Exhibit (6), and;
 f. Various X-rays and CT scans of plaintiff that were identified as exhibits during the depositions of the medical experts.
7. At the hearing on June 5, 2004, plaintiff submitted a Notebook of Medical Records, which was admitted into the record and marked as Plaintiff's Exhibit (1).
8. The issues to be determined by the Full Commission are what compensation plaintiff is entitled to receive pursuant to N.C. Gen. Stat. §§ 97-31 and 97-64, and whether either party is entitled to attorney's fees or other sanctions pursuant to N.C. Gen. Stat. § 97-88.1.
 * * * * * * * * * * *
In accordance with the directives of the North Carolina Supreme Court, and based upon the foregoing stipulations and evidence of record, the Full Commission enters the following:
 FINDINGS OF FACT
1. The Findings of Fact of the Full Commission Opinion and Award filed December 18, 1998, as approved by the North Carolina Court of Appeals and Supreme Court, are res judicata and if not specifically addressed herein, are incorporated by reference.
2. At the time of the hearing before Deputy Commissioner Houser, plaintiff was 79 years of age and was born on August 31, 1924. Plaintiff completed the sixth grade, served in the armed forces, and later attended night classes, where he was credited with a ninth grade education. Plaintiff's employment history consists of various heavy physical labor jobs, and plaintiff obtained the requisite knowledge to perform his job duties through on-the-job training.
3. Plaintiff filed an Industrial Commission Form 18B in July 1995, alleging that he was permanently and totally disabled as the result of contracting asbestosis through his employment with defendant. At the 1996 hearing and in the 1998 Full Commission decision, no evidence was presented concerning plaintiff's wage earning capacity. Rather, the issue was whether plaintiff had asbestosis, thereby entitling him to 104 weeks of compensation under the then prevailing practice pursuant to N.C. Gen. Stat. §97-61.5. The fact that the Supreme Court overturned the Commission's award of 104 weeks of compensation under N.C. Gen. Stat. § 97-61.5 and remanded this case for further proceedings did not prevent the Commission from reopening the record to take evidence regarding plaintiff's wage earning capacity.
4. In 1987, plaintiff ended his employment with defendant because Continental purchased the General Tire plant and plaintiff was concerned about his retirement benefits. At that time, plaintiff was not experiencing breathing problems, although he was experiencing some difficulties performing his job duties.
5. After leaving his job with defendant in 1987, plaintiff began to experience significant functional limitations due to breathing problems caused by his asbestosis. Plaintiff needed oxygen at night for four or five years, but was unable to continue using it after receiving a bill for $300.00. Prior to the development of his breathing problems, plaintiff performed his own yard work and maintained a 30' x 60' garden, although he ceased performing maintenance work at his church in 1996. After retirement, plaintiff began to reduce the amount of gardening and housework he performed, and by approximately 2003, plaintiff stopped all gardening and limited fishing to twice per year. At the time of the hearing before the Deputy Commissioner, plaintiff had a limited ability to walk any distance or up inclines, and relied on family members to perform housework and shopping.
6. At the June 5, 2004 Deputy Commissioner's hearing, plaintiff's son, Paul Austin, testified that he built a home in 1987 and plaintiff assisted him extensively with the work and that plaintiff was able to perform heavy lifting. Plaintiff's other son, Jay Austin, testified that in 1993 and 1994 when he built his home, plaintiff was only able to perform light work with little exertion. Also, by 1993 and 1994, plaintiff testified that he was not physically able to perform his former jobs, including the position he held with defendant. Plaintiff's grandson, Scott Crimminger, testified that plaintiff had difficulty picking up Scott's son, who was born in 1996.
7. On May 3, 1994, plaintiff was diagnosed with asbestosis. Since February 2, 1998, Dr. William Alleyne has been plaintiff's primary treating physician for his pulmonary problems. Based upon the available pulmonary information, Dr. Alleyne felt that plaintiff has a Class II impairment, which results in a 10% to 25% impairment of the whole person. Dr. Alleyne explained that from 2001 to 2004, plaintiff's pulmonary function declined; however, plaintiff's impairment rating has not changed.
8. In his deposition, Dr. Alleyne testified that plaintiff's history of smoking has a minimal impact on his current breathing problems and that plaintiff's breathing problems are caused by his work-related asbestosis. Dr. Alleyne testified that as of 1996, based upon his breathing problems, age, education, and work experience, plaintiff did not retain any wage earning capacity. Dr. Alleyne stated to a reasonable degree of medical certainty that plaintiff's inability to work and earn wages is permanent and primarily due to plaintiff's asbestosis. Dr. Alleyne explained that although plaintiff has several other medical problems, these conditions are well controlled and do not contribute to plaintiff's inability to work. Although Dr. Alleyne testified that plaintiff was unable to work and earn wages as of an unspecified date in 1996, he did not begin treating plaintiff until February 2, 1998. As a result, the Full Commission gives little weight to Dr. Alleyne's opinion that plaintiff was unable to earn wages as of 1996.
9. Stephen D. Carpenter, a vocational rehabilitation expert, administered multiple examinations and tests designed to assess plaintiff's physical and cognitive abilities, as well as his ability to earn wages. Mr. Carpenter testified that plaintiff exhibited slow psychomotor speed during testing, which would adversely affect his work performance to a significant degree, in even unskilled jobs. Additionally, Mr. Carpenter found that plaintiff reads at a fifth grade level, has math abilities at a sixth grade level, and spells at fourth grade level, which renders plaintiff functionally illiterate in spelling. According to Mr. Carpenter, plaintiff would be significantly restricted to engage in even simple jobs with his level of ability and based on his cognitive abilities alone, plaintiff's vocational outlook is significantly impaired. Mr. Carpenter testified that if plaintiff were on 24-hour oxygen therapy, he would not be able to sustain any normal vocational function. Mr. Carpenter did not recommend that plaintiff undergo retraining or vocational rehabilitation due to his significant problems with concentration, attention, and memory. Mr. Carpenter testified that as of 1996, plaintiff's asbestosis, breathing difficulties, and environmental restrictions were a significant contributing factor to plaintiff's permanent loss of wage earning capacity.
10. Based upon the totality of the credible lay and medical evidence of record, the Full Commission finds that plaintiff was totally and permanently disabled from any employment by February 2, 1998.
11. Neither party pursued this matter without reasonable grounds entitling the other to recover attorney's fees pursuant to N.C. Gen. Stat. § 97-88.1.
 * * * * * * * * * * *
In accordance with the directives of the North Carolina Supreme Court, and based upon the foregoing stipulations and findings of fact, the Full Commission concludes as follows:
 CONCLUSIONS OF LAW
1. Plaintiff was last injuriously exposed to the hazards of his occupational disease during his employment with defendant and, as a result of said exposure, plaintiff contracted the occupational disease asbestosis. N.C. Gen. Stat. §§ 97-53(24); 97-57.
2. In case of disablement or death from asbestosis, compensation shall be payable in accordance with the North Carolina Workers' Compensation Act. N.C. Gen. Stat. § 97-64. An employee who is not employed when he is diagnosed with asbestosis may not proceed with a claim under N.C. Gen. Stat. § 97-61.5(b).Austin v. Continental General Tire, 354 N.C. 344,553 S.E.2d 680 (2001). As plaintiff was not employed at the time he was diagnosed with asbestosis, plaintiff is entitled to seek compensation under N.C. Gen. Stat. § 97-64. Id.
3. "The Commission may not deny liability benefits because the claimant retired where there is evidence of diminished earning capacity caused by an occupational disease. . . . [T]he Commission must decide disability based on the particular characteristics of the individual employee." Troutman v. Whiteand Simpson, 121 N.C. App. 48, 464 S.E.2d 481 (1995); Heffnerv. Cone Mills Corp., 83 N.C. App. 84, 349 S.E.2d 70 (1986). In the instant case, plaintiff is not barred from compensation because he retired prior to filing a claim. Heffner v. ConeMills Corp., supra.
4. In addition, a portion of any disability may not be charged to plaintiff's age or poor learning ability. Mabe v. NorthCarolina Granite Corp., 15 N.C. App. 253, 189 S.E.2d 804 (1972). Where an employee has a pre-existing non-disabling, non-work related condition that is aggravated or accelerated by an occupational disease, the employer must compensate the employee for the resulting compensable disability. Wilder V. Barbour BoatWorks, 84 N.C. App. 188, 352 S.E.2d 690 (1987). In this case, defendants may not apportion plaintiff's disability due to his advancing age, poor learning ability, or additional non-work related medical problems. Wilder V. Barbour Boat Works, supra;Mabe v. North Carolina Granite Corp., supra.
5. Once plaintiff presents competent evidence of his inability to earn wages, the burden then shifts to defendant to show that plaintiff is capable of obtaining suitable employment, taking into account his physical and vocational limitations. Kennedy v.Duke University Medical Center, 101 N.C. App. 24, 398 S.E.2d 677
(1990). Where there is no evidence to indicate defendant met its burden, plaintiff is entitled to permanent and total disability benefits. Shaw v. U.P.S., 116 N.C. App. 598, 449 S.E.2d 50
(1994), aff'd, 342 N.C. 189, 463 S.E.2d 78 (1995). In the present case, plaintiff presented competent evidence of his inability to earn wages, satisfying his burden of proving disability. N.C. Gen. Stat. § 97-2(9). Defendant did not meet their burden to show that employment is available for plaintiff and that he would be capable of obtaining employment, taking into account his physical and vocational limitations. As a result, plaintiff is entitled to permanent total disability benefits at the rate of $308.00 per week beginning February 2, 1998 and continuing throughout his lifetime. N.C. Gen. Stat. § 97-29;Shaw v. U.P.S., supra; Kennedy v. Duke University MedicalCenter, supra.
6. Plaintiff is entitled to have defendant pay for all related medical expenses incurred or to be incurred as a result of the compensable asbestosis. N.C. Gen. Stat. §§ 97-25; 97-25.1.
7. The prosecution and defense of this claim were reasonable and not stubborn, unfounded litigiousness and, therefore, neither party is entitled to recover attorney's fees pursuant to N.C. Gen. Stat. § 97-88.1.
 * * * * * * * * * * *
In accordance with the directives of the North Carolina Supreme Court, and based upon the foregoing findings of fact and conclusions of law, the Full Commission enters the following:
 AWARD
1. Subject to the attorney's fee approved herein, defendant shall pay permanent total disability benefits to plaintiff at the rate of $308.00 per week beginning February 2, 1998 and continuing throughout plaintiff's lifetime. Any compensation having accrued shall be paid in a lump sum.
2. Defendant shall pay for all related medical expenses incurred or to be incurred by plaintiff as the result of his compensable asbestosis.
3. A reasonable attorney's fee of 25% of the compensation awarded in paragraph 1 of this Award is approved for plaintiff's counsel. From the compensation having accrued, this fee shall be deducted from the amounts due plaintiff and paid directly to plaintiff's counsel.
4. Defendant shall pay the costs.
This 8th day of December 2005.
 S/______________________ LAURA KRANIFELD MAVRETIC COMMISSIONER
CONCURRING:
 S/___________________ BERNADINE S. BALLANCE COMMISSIONER
 S/_______________ DIANNE C. SELLERS COMMISSIONER